(93 South. 397)

## SMITH v. STATE. (6 Div. 480.)

(Supreme Court of Alabama. May 4, 1922.)

**1. Jury ⚫═➣71—Not error to restore stricken juror to complete panel to begin anew process of striking.**

In a prosecution for robbery, where the solicitor had stricken one name from the list of the jury panel, it was the duty of the court, on discovering that the list contained only 29 names, to suspend the proceeding until other names could be added to the list, so as to furnish a minimum of 30 veniremen, and it was proper to restore to the list the name of the stricken juror in order to begin anew the process of striking under Acts 1919, pp. 1039, 1041.

**2. Jury ⚫═➣101—Presence of jurors during previous trial of accused held not to vitiate venire.**

The venire was not vitiated by the fact that some of the veniremen were present in court during a previous trial of defendant, for robbery and heard the testimony, and knew what the verdict was.

**3. Robbery ⚫═➣23(2)—Not error to admit testimony of assaulted robbery victim as to character and extent of injuries.**

In a prosecution for robbery, it was not error to allow the victim, who was assaulted and shot by the robber, to testify as to the character, extent and duration of his injuries.

**4. Robbery ⚫═➣23(1)—Admission of condition of hat worn by robber held proper.**

In a prosecution for robbery, where the accused testified on cross-examination that when arrested he was wearing a cap, and had left his hat at a shop to be repaired, it was not error, in view of the fact that the victim shot at his assailant several times, for the state to show that defendant's hat, worn on that day, had a bullet hole in it.

**5. Criminal law ⚫═➣759(2)—Charge suggesting intent on part of every robber to kill improper.**

In a prosecution for robbery, a charge that every highway robber intends, from the inception of his plan to rob, to also kill his victim

─────────────────────────────────────

if necessary to effect his purpose or to make his escape *held* error, as invading the jury's province by suggesting such an inference.

Gardner and Thomas, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; H. P. Heflin, Judge.

Emory Smith was convicted of robbery, and he appeals. Reversed and remanded.

The defendant was convicted of the crime of robbery, and sentenced to death. When the case was called for trial defendant objected to being tried during that week, on the ground that he had already been tried that week by the same panel of jurors and convicted on another charge of robbery, with a sentence to life imprisonment, and because at least 12 of the panel would be prejudiced thereby, and because the others had heard the testimony in that case, and would also be prejudiced.

Defendant was put to trial upon a list of jurors containing 33 names, 5 of whom served in the previous trial; thereupon 4 of that 5 were stricken for cause, leaving only 29 to be alternately stricken from, instead of 30 as required by law. The solicitor then struck the name of W. M. Lowery, the only remaining one of said 5 jurors, when it was discovered that the list was 1 name short, whereupon the court ordered Lowery's name restored, and recessed until 12 jurors out on another case could be brought in and qualified and added to this list. Defendant objected to each of these acts and proceedings, and separately excepted to rulings of the court. Thereupon the jury was selected by striking, but it does not appear whether said Lowery was stricken again.

Defendant's counsel stated orally that he wished to interpose a plea of former jeopardy on the theory that the trial had been entered upon and discontinued without defendant's consent. The record does not show such a plea.

Exceptions were reserved to several rulings on the evidence, as referred to in the opinion, and to the following remarks of the trial judge in his oral charge to the jury:

"Now robbery is one of the most serious crimes known to our law. Why? It is because when a robber makes up his mind to go upon the highways of your county and rob people, he also at that time usually makes up his mind to kill his victims if it becomes necessary to rob them or to make his escape. That is why the law makes the penalty so severe. It is not the few dollars that he usually gets—sometimes he gets more than at other times, but it is not the money value of what he takes, so much as the danger to human life when the robber goes out to take by force the property of some man, or by putting him in such fear as unwillingly to part with same; in other words to rob him. If the victim undertakes to defend himself, he is in danger of losing his life, because, as I stated, the robber has very little or no respect for human life. When he becomes so depraved that he makes up his mind to rob people upon highways, he makes up his mind to do everything that is necessary to accomplish his purpose, even to the taking of human life."

The victim of the robbery was held up on the highway about 11 o'clock a. m., and exchanged several shots with the robber, who finally shot him in the side. The issue of guilt or innocence depended mainly upon the identification of the defendant by his victim, whose testimony was clear and positive as to his identity.

Alvin M. Douglas, of Birmingham, for appellant.

Counsel enumerates assignments of error, without citing authorities.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Where a part of an oral charge is excepted to, all such part must be bad, or the exception will not be availing. 205 Ala. 638, 89 South. 48.

SOMERVILLE, J. [1] There was no error in the procedure of the trial court with respect to the venire from which the panel was selected for the trial of this defendant. Although the solicitor had stricken one name from the list, it was the duty of the court, upon discovering that the list contained only 29 names, to suspend the proceeding until other names could be added to the list so as to furnish a minimum of 30 veniremen, as required by law; and it was of course proper to restore to the list the name of the stricken juror, in order to begin anew the process of striking. Acts 1919, pp. 1039, 1041.

It appears that all the jurors who participated in the previous trial of defendant the same week were stricken by the solicitor, thereby eliminating that ground of complaint.

[2] The venire was not vitiated by the fact that some of the veniremen were present in court during defendant's previous trial, and heard the testimony and knew what the verdict was. Stover v. State, 204 Ala. 311, 85 South. 393.

[3] The trial court did not err in allowing Winford, the victim of the robbery, who was assaulted and shot by the robber, to testify as to the character, extent and duration of his injuries. The precise question was so ruled by this court in Brown v. State, 120 Ala. 342, 25 South. 182.

[4] Defendant testified on cross-examination that when he was arrested he was wearing a cap, and that he had left his hat at a shop to be repaired. He was then asked, and over his objection required to answer, whether his hat had a bullet hole in it. His answer was that it had a little hole burned in it by laying a cigarette on it one night. In view of the fact that Winford shot at his assailant several times during the assault, we think it was competent for the state to

show that defendant's hat worn on that day had a bullet hole in it, and that he was putting the hat out of sight. It was of course a slight circumstance, and subject to explanation, if any there was; and defendant in fact offered an explanation, the credibility of which was for the jury, under all the evidence. We have examined with due care the other rulings on the evidence, and find nothing of which defendant can complain.

[5] Defendant excepted to a portion of the oral charge, as shown in the statement above. The writer was, at first, of the opinion that the matter objected to did not embrace any statement of legal principles, but was merely a homily on the heinous nature of the crime of robbery, and the theory of criminal intent upon which the law authorizes the infliction of capital punishment in robbery cases. Such observations from the bench, dealing in the abstract with the crime charged, and in no way suggesting the guilt of the defendant, nor the degree of his punishment if found guilty, cannot be regarded as prejudicial, and indeed are entirely within the proprieties. But, upon a more deliberate analysis and consideration of the language in question, we have reached the conclusion that it invades the province of the jury by suggesting, not only the appropriateness of capital punishment in robbery cases, but also that every highway robber intends, from the inception of his plan to rob, to also kill his victim if necessary to effect his purpose, or to make his escape. While this is a fair and reasonable inference of fact, it is not an inference of law, nor can it be properly suggested to the jury by the trial judge as an inference of fact in any particular case. In the instant case the suggestion that such an intent existed may very probably have exerted an important influence upon the verdict of the jury in the infliction of capital punishment. We therefore hold that it was error which must work a reversal of the judgment of conviction.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SAYRE, and MILLER, JJ., concur.
GARDNER and THOMAS, JJ., dissent.