Eugene BROMWELL # 130–995

v.

Warden, Mr. Ralph L. WILLIAMS, Maryland House of Correction, etc.

Civ. No. K–76–926.

United States District Court,
D. Maryland.

Dec. 30, 1977.

Jess G. Schiffmann, Baltimore, Md., for plaintiff.

Francis B. Burch, Atty. Gen., and John P. Stafford, Jr., Asst. Atty. Gen., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Bromwell, currently incarcerated in the Maryland House of Correction, seeks herein habeas corpus relief. Petitioner has pressed in this case a number of quests for relief most of which have been denied in this Court's Memorandum and Order of March 15, 1977.[1] Only one of Bromwell's contentions remains for decision.

Petitioner was tried by a jury on January 7, 1975 in the Circuit Court for Dorchester County, Maryland, Judge C. Burnam Mace presiding, on Criminal Information No. 3086, which charged him with common law assault and battery, and on Criminal Information No. 3087, which charged him with a handgun law violation. While the voir dire panel was present in the courtroom prior to the selection of the jury, the prosecution moved to consolidate those two informations with Criminal Information No. 3088, which charged Bromwell with breaking and entering and larceny. After defense counsel objected to such consolidation, Judge Mace denied the motion. Immediately thereafter, the voir dire panel was sworn and the jury selected. Two veniremen were excused because they personally knew the defendant or a member of his family. Another was excused because she did not believe she could render an impartial verdict. None of the prospective jurors, including those excused, professed to have formed an opinion as to the guilt or innocence of the defendant. Neither defense counsel nor Bromwell made any objection to any members of the panel or of the jury on the ground that they had overheard the discussion of the consolidation motion relating to a criminal information not before that jury. Nor did either of them mention or refer in any way to that occurrence.

During the trial, the State presented testimony that at approximately 12:30 a. m. on August 26, 1974, State Trooper Parks, while patrolling in a state police car, observed a black Cadillac speeding in the opposite lane, crossed lanes and pursued the Cadillac. When the car stopped for a traffic light, the Trooper stepped out of his police cruiser. However, the light changed and the Cadillac started off. The Trooper returned to his cruiser, activated the red flashers, and turned on the siren. Shortly thereafter, the Cadillac stopped again.

1. A copy of that March 15, 1977 Memorandum and Order is attached hereto. Since March 15, 1977, the parties have stipulated that the prior unrelated conviction, considered at the time of sentencing and on appeal at that time, has been affirmed by the Court of Special Appeals of Maryland in an unreported per curiam opinion dated May 14, 1975. As to that issue, *see generally,* in addition to this Court's discussion in its March 15, 1977 Memorandum and Order, *United States v. Shaver,* 511 F.2d 933 (4th Cir. 1975); *Suggs v. State,* 6 Md.App. 231, 250 A.2d 670, *cert. denied,* 255 Md. 744 (1969); Annot., 16 A.L.R.3d 726 (1967).

Trooper Parks once again left his own car and approached the other vehicle which contained four or five males. He asked the operator to step from the car, telling him that he was under arrest for exceeding the speed limit by more than 30 m. p. h. During the trial the Trooper identified Bromwell as the operator of the Cadillac. Hearing taunts from within the vehicle and anticipating trouble, the Trooper decided to take Bromwell back to the police cruiser and took hold of Bromwell's upper right arm. Thereupon, Bromwell complained and explained that his arm was bandaged due to a burn. Trooper Parks testified that he then dropped his grip to Bromwell's wrist and led Bromwell back to the cruiser. At that time, Parks noticed the other occupants of Bromwell's car exiting the Cadillac. It was also at about that moment that the Trooper was struck in the mouth by Bromwell, and subsequently struck or kicked three or four more times by Bromwell before the latter fled on foot. One of the other occupants of the Cadillac started the car and picked up Bromwell as Bromwell fled down the street.

Trooper Parks returned to his cruiser and pursued the Cadillac which shortly came to a stop at a corner. There, another struggle ensued between Bromwell and Trooper Parks. At trial Parks testified that he was struck several times by Bromwell before he grabbed his adversary and they both fell into some bushes. A large crowd gathered. Meanwhile, Parks was kicked about the head and body several times. A few minutes later Patrolman Harris of the Cambridge city police arrived on the scene and arrested Bromwell. Parks was bloodied and his uniform was torn. Harris testified that Parks informed him that Parks had been attacked by Bromwell.

Harris proceeded to transport Bromwell to the Dorchester County Jail in Harris' patrol car. Approximately four hours later during a routine inspection of Harris' patrol car, the Cambridge police discovered a paper bag containing an unloaded .32 revolver.[2] That weapon was stuffed between the cushions of the back seat. Harris said that he did not leave the car unattended at any time during the night nor did he see anybody get into his patrol car other than Bromwell.

Bromwell elected not to testify in his own behalf and produced no evidence in his defense other than one of the state troopers other than Parks, and a medical report.

On the above-related evidence, the jury found Bromwell guilty beyond a reasonable doubt on both the assault and battery charge and the handgun law charge. Judge Mace sentenced Bromwell to five years' confinement for assault and to a consecutive two-year term for the handgun violation. Those two sentences were also expressly made consecutive to any other sentences Bromwell was then serving. On appeal, petitioner's conviction was affirmed by the Court of Special Appeals of Maryland. Bromwell's application for post-conviction relief was subsequently denied by the Circuit Court for Dorchester County. The Court of Special Appeals denied Bromwell's application for leave to appeal.

The question arises as to whether the mention before the voir dire panel of the charges pending against Bromwell for breaking and entering and larceny deprived Bromwell of his constitutional right to a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments.[3]

### Waiver

The State argues that petitioner waived any constitutional right he may have had with respect to the selection of the jury by failing to challenge the voir dire panel or any individual members of it at trial. Bromwell first suggested that the jury panel's presence during the consolidation mo-

---

**2.** While it is not entirely clear, it would appear that Harris placed Bromwell in the back of his car (Tr. 43–48, 60) and drove without any other officer or passenger in the car to the County Jail.

**3.** The case against Bromwell for breaking and entering and larceny was nolle prossed subsequent to Bromwell's convictions upon the assault and battery and handgun charges.

tion was constitutionally infirm, in his appeal to the Court of Special Appeals of Maryland. That Court held that, under Maryland Rule 1085, petitioner could not raise such an objection for the first time on appeal in that Court. Accordingly, that Court did not reach the merits of the contention. Nor was that contention considered in the state post-conviction proceeding because questions decided on direct appeal are not reviewable in such a proceeding. Thus, there was no obligation upon Bromwell to press that contention in the state post-conviction proceeding as a condition to raising it in this Court in this case, since to do so would have been useless. 28 U.S.C. § 2254; *see Lefkowitz v. Newsome,* 420 U.S. 283, 291 n.8, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975); *Thompson v. Peyton,* 406 F.2d 473 (4th Cir. 1968). However, in any event, the State has stated that it is not raising any issue herein concerning failure by petitioner to exhaust state remedies as to that issue. Accordingly, pursuant to *Jenkins v. Fitzberger,* 440 F.2d 1188, 1189 (4th Cir. 1971), the State's waiver of the exhaustion requirement is accepted by this Court.

▬ A defendant is entitled to every reasonable presumption against waiver of fundamental constitutional rights. *See Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Pitts v. North Carolina,* 395 F.2d 182, 188–89 (4th Cir. 1968). In *Zerbst,* Mr. Justice Black wrote (304 U.S. at 464, 58 S.Ct. at 1023): "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Before a waiver of a constitutional right can be found, examination of the particular facts and circumstances of the case must establish the person's knowledge of his right and his intent to forgo it. *See Humphrey v. Cady,* 405 U.S. 504, 517, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *United States v. Gomez,* 457 F.2d 593, 595–96 (4th Cir. 1972); *Kelly v. Peyton,* 420 F.2d 912, 914 (4th Cir. 1969). Because a waiver by a defendant must be the product of his own knowing decision, defendant is not always

and necessarily bound by the default or decision of his counsel. *See Humphrey v. Cady, supra,* 405 U.S. at 517, 92 S.Ct. 1048. Nor is a federal constitutional right usually deemed waived by simple inadvertence. *See Mottram v. Murch,* 458 F.2d 626, 629–30 (1st Cir.), *rev'd on other grounds, Murch v. Mottram,* 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972) (per curiam); *cf. Hunt v. Warden,* 335 F.2d 936, 944 (4th Cir. 1964).

In *Murch v. Mottram,* 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), the petitioner, after an explicit warning by the state trial judge in petitioner's first post-conviction proceeding that petitioner had to raise all grounds for relief at that time or be deemed to have waived them, filed a second state post-conviction proceeding. Therein, petitioner was denied relief on the ground of his failure to raise in his first post-conviction proceeding the claim stated by him in his second such proceeding. Mottram then sought federal habeas corpus relief. In a per curiam opinion, a majority of the Supreme Court held that Mottram had made a knowing and intelligent waiver in the state court. The Supreme Court particularly noted the following comment of the federal district court after the latter had conducted an evidentiary hearing:

> From the Court's personal observation of petitioner, it is apparent that he is of at least average intelligence and well deserves his reputation as a cunning "jailhouse lawyer." He was represented at the time by counsel of unquestioned competence and integrity. It is inconceivable that his counsel did not fully explain to petitioner the possible consequences of his action. The Court, therefore, finds that petitioner was fully aware of these consequences and that by deliberately bypassing the orderly procedures provided by the Maine post-conviction statute for raising the issues presented in his most recent state habeas petition and in his present petition in this Court, petitioner has forfeited his right to do so. * * *

*Mottram v. Murch,* 330 F.Supp. 51, 57 (D.Me.1971) *quoted in Murch v. Mottram, supra,* 409 U.S. at 44–45, 93 S.Ct. at 73 (1972).

In contrast to the situation in *Murch v. Mottram*, there is no evidence in this case of a knowing, deliberate waiver by Bromwell. The parties have stipulated that the prosecutor and defense counsel in Bromwell's trial and the present presiding judge sitting in the Circuit Court for Dorchester County would all testify, if called to the witness stand in this case, that it has in the past been customary for consolidation motions in a criminal case to be argued within the hearing of the petit jury panel.[4] That custom apparently developed because the petit jury room in the Dorchester County Courthouse was not large enough to accommodate an entire panel. The transcript of petitioner's trial reveals that neither Judge Mace nor any of trial counsel raised any question about the propriety of the presence of the jury panel during the discussion of the consolidation motion. The parties have also stipulated that petitioner's defense counsel, if called to testify in this case, would state that he did not consult with his client concerning his (counsel's) failure to object to the presence of the jury panel.[5] Thus, Bromwell himself did not intentionally waive any constitutional right or privilege that may have been impaired by the panel's presence.

Nothing in *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), alters that conclusion. In *Estelle*, a defendant in a criminal case, who had been unable to post bond and was thus held in custody awaiting trial, appeared in court in prison garb. The defendant had unsuccessfully requested "an officer at the jail" to let the defendant have "his civilian clothes," but neither defendant nor his counsel made any objection (at 502–03, 96 S.Ct. 1691) to the prison attire at trial. Mr. Chief Justice Burger, writing for the majority, held that, although a state cannot compel an accused to stand trial in identifiable prison clothes, Williams' failure to object to such clothes undermined any successful assertion of compulsion by the state necessary to establish a constitutional violation.

■ *Estelle* is distinguishable from this case for at least two reasons. As the Supreme Court noted in *Estelle* (at 507–09, 96 S.Ct. 1691), since defendants occasionally prefer to stand trial in prison clothes in the hope of winning the jury's sympathy, it is the obligation of a defendant to make known to the trial court his desire to be in civilian clothes before the state can be held accountable for his attire. By contrast, it is extremely unlikely that there would be any value to a defendant in allowing prospective jurors to hear about other charges against him.[6] Second, in *Estelle*, there was no "lack of appreciation of the issue," for both the defendant and his counsel were fully conscious of his appearance to the jury. *Id.* at 509–10, 96 S.Ct. 1691. In this case, it appears that neither Court, prosecutor, defense counsel, nor defendant appreciated the constitutional implications of the discussion of the consolidation motion in front of the veniremen. Thus, although under the circumstances of *Estelle* the defendant was deemed to have waived his objection, the facts of this case do not permit a similar inference.

Very recently, in *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977), the Fourth Circuit had occasion to discuss the possibility of a defendant's waiver of constitutionally-based objections to certain pre-trial dis-

4. Judge Charles E. Edmondson, presently presiding Judge for Dorchester County, and Judge William B. Yates, II, the former State's Attorney who prosecuted the petitioner and now a District Court Judge of the State of Maryland, have both stated that the practice of permitting voir dire panels to sit in the courtroom during the argument of consolidation motions has been discontinued.

5. Bromwell's trial counsel has stated that in the future he will object to having a petit jury panel within hearing of a consolidation motion.

6. It is true that a defendant, once the "cat is out of the bag" with regard to other charges pending against him, might still prefer to retain a particular jury panel even if that panel has been exposed to such information rather than to have a different panel. However, it would seem that a defendant would always prefer that a panel not learn, in the first place, of other charges.

cussions before a voir dire panel. In *Marzullo*, after a case had been called for trial, the victim of an alleged rape stated before the jury panel that she could not identify Marzullo as her attacker. The prosecution remarked, seemingly also in front of the panel, that the victim had previously said she could identify Marzullo. The prosecutor dismissed that case. He then proceeded to call for trial on a different indictment a second case against Marzullo involving rape and related charges. Defense counsel waived any objection to the jurors, who had heard the above discussion in the first case, being on the panel in the second case. As to waiver, Judge Butzner wrote (at 546):

> The state's defenses in the habeas proceeding of waiver and trial tactics are not supported by the records of either the state trial or the post-conviction hearing. Before the trial, Marzullo's attorney explained the procedure for striking the jury, but there is no evidence that he advised Marzullo of his right to have the proceedings about the first indictment conducted in the absence of the jury. Without proof that Marzullo knew his rights, waiver cannot be presumed. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

The last sentence quoted above is completely applicable herein.

### Procedural Default

Although Bromwell did not knowingly waive any constitutional right during the pre-trial motion and voir dire examination period, his failure then to object to the discussion before the jury panel might constitute an "adequate and independent state procedural ground" barring federal habeas corpus review with regard to that question. The Supreme Court, in two recent decisions, has elaborated upon that concept.

In *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), a Louisiana state prisoner sought federal habeas corpus relief on the ground that blacks were unconstitutionally excluded from the grand jury which indicted him. The petitioner had failed to raise any objection to

the composition of the grand jury before trial, as required by Louisiana law, which provided that "all such objections shall be considered as waived and shall not afterwards be urged or heard." 425 U.S. at 537, 96 S.Ct. at 1709. Relying on *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), in which the Court had found a procedural default because of defendant's failure, pursuant to Federal Criminal Rule 12, timely to challenge the validity of the federal grand jury which had indicted him, Mr. Justice Stewart, speaking for the majority in *Francis v. Henderson*, affirmed the denial of habeas corpus relief, stating:

> We conclude, therefore, that the Court of Appeals was correct in holding that the rule of *Davis v. United States* applies with equal force when a federal court is asked in a habeas corpus proceeding to overturn a state-court conviction because of an allegedly unconstitutional grand jury indictment. In a collateral attack upon a conviction that rule requires, contrary to the petitioner's assertion, not only a showing of "cause" for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice. * * *

*Id.* 425 U.S. at 542, 96 S.Ct. at 1708, 1711 (footnotes omitted).

More recently, the Supreme Court extended the *Davis-Francis* rule in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. at 2497, 53 L.Ed.2d 594 (1977). In that case, a Florida prisoner challenged the use at his trial of inculpatory statements which he asserted were inadmissible due to his lack of understanding of the *Miranda* warnings. The petitioner had failed to comply with a Florida procedural rule which required that motions to suppress confessions be made prior to or during trial. The Supreme Court held that the petitioner's failure to make a timely objection barred federal habeas corpus review. Mr. Justice Rehnquist, writing for six members of the Court, stated:

> We therefore conclude that Florida procedure did, consistently with the Unit-

ed States Constitution, require that petitioner's confession be challenged at trial or not at all, and thus his failure to timely object to its admission amounted to an independent and adequate state procedural ground which would have prevented direct review here. See *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). We thus come to the crux of this case. Shall the rule of *Francis v. Henderson*, supra, barring federal habeas review absent a showing of "cause" and "prejudice" attendant to a state procedural waiver, be applied to a waived objection to the admission of a confession at trial? We answer that question in the affirmative.

\* \* \* \* \* \*

We believe the adoption of the *Francis* rule in this situation will have the salutary effect of making the state trial on the merits the "main event," so to speak, rather than a tryout on the road for what will later be the determinative federal habeas hearing. There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas hearing a full airing of the federal constitutional claims which were not raised in the state proceedings. If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection.

The "cause" and "prejudice" exception of the *Francis* rule will afford an adequate guarantee, we think, that the rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice. Whatever precise content may be given those terms by later cases, we feel confident in holding without further elaboration that they do not exist here. Respondent has advanced no explanation whatever for his failure to object at trial, and, as the proceeding unfolded, the trial judge is certainly not to be faulted for failing to question the admission of the confession himself. The other evidence of guilt presented at trial, moreover, was substantial to a degree that would negate any possibility of actual prejudice resulting to the respondent from the admission of his inculpatory statement.

At 86–87, 90–91, 97 S.Ct. at 2506, 2508–2509, 53 L.Ed.2d at 608, 610–11 (footnotes omitted).

The strictures of *Francis* and *Wainwright* do not appear applicable to this case. To begin with it is not clear that Maryland has a contemporaneous objection rule akin to the Florida and Louisiana rules involved in *Francis* and *Wainwright*.[7] Maryland's rule

7. The Maryland Post Conviction Act, Md.Ann. Code art. 27, § 645A(c), states:

(c) *When allegation of error deemed to have been waived.*—For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, *but intelligently and knowingly failed to make*, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.

When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation.

(Emphasis added). *See also* Md. Rule BK48 (restating § 645A(c)).

None of the state courts which reviewed Bromwell's conviction relied on § 645A(c). On direct review, the Court of Special Appeals of

is not specifically and solely keyed to trial developments.[8] But, more importantly, the "cause" and "prejudice" exception to the *Francis-Wainwright* rule would appear applicable in this case.

**[4]** The Supreme Court opinions in *Davis, Francis* and *Wainwright* provide little guidance as to the meaning of that exception.[9] Further, as yet there are only a few federal appellate decisions establishing that exception's parameters. *See, e. g.,* Judge Winter's dissent in *Crowell v. Zahradnick,* 571 F.2d 1257 at 1261–1262, No. 77–1186, (4th Cir. 1977); *Rinehart v. Brewer,* 561 F.2d 126, 130 n.6 (8th Cir. 1977);[10] *Ev-*

---

Maryland disposed of Bromwell's claim concerning the consolidation motion by reference to Md. Rule 1085, which states that the Court of Special Appeals "will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court."

In the state post-conviction proceeding, the Court disposed of this claim on the ground that it had already been decided on direct appeal, citing Md.Ann.Code art. 27, § 645A(b).

8. *See* the discussion in *Wainwright v. Sykes,* 433 U.S. at 88–90, 97 S.Ct. at 2507–2508, 53 L.Ed.2d at 609–10. Although there is nothing in the language of Md. Rule 1085 which provides for waiver as did the state rules in *Francis* and *Wainwright,* that rule may be a contemporaneous objection rule under *Wainwright. Cf. Crowell v. Zahradnick,* 571 F.2d 1257, at 1258 n.1, No. 77–1186 (4th Cir. 1977) (holding that former Rule 5:7 of the Rules of the Supreme Court of Virginia, which provided that error ordinarily would not be noticed on appeal unless the ground for objection was stated with reasonable certainty at trial, was a contemporaneous objection rule under *Wainwright*).

9. Indeed, in *Wainwright,* Mr. Justice Rehnquist wrote (at 87–88, 97 S.Ct. at 2507; 53 L.Ed.2d at 608–09):

We leave open for resolution in future decisions the precise definition of the "cause" and "prejudice" standard, and note here only that it is narrower than the standard set forth in dicta in *Fay v. Noia,* supra, which would make federal habeas review generally available to state convicts absent a knowing and deliberate waiver of the federal constitutional contention. It is the sweeping language of *Fay v. Noia,* supra, going far beyond the facts of the case eliciting it, which we today reject.[12]

[12] We have no occasion today to consider the *Fay* rule as applied to the facts there confronting the Court. Whether the *Francis* rule should preclude federal habeas review of claims not made in accordance with state procedure where the criminal defendant has surrendered, other than for reasons of tactical advantage, the right to have all of his claims of trial error considered by a state appellate court, we leave for another day.

The Court in *Fay* stated its knowing and deliberate waiver rule in language which ap-

plied not only to the waiver of the right to appeal, but to failures to raise individual substantive objections in the state trial. Then, with a single sentence in footnote, the Court swept aside all decisions of this Court "to the extent that [they] may be read to suggest a standard of discretion in federal habeas corpus proceedings different from what we lay down today. . . ." 372 U.S. 391, at 439 n.44, 83 S.Ct. 822, 9 L.Ed.2d 837. We do not choose to paint with a similarly broad brush here.

*See also* Mr. Justice Stevens' concurring opinion, at 94, 97 S.Ct. at 2510, 53 L.Ed.2d at 613.

10. Footnote 6 in *Rinehart* reads as follows:

Although addressed by neither party here, a more recent line of cases has, in some circumstances, modified the standard to be applied in determining whether habeas relief is barred by a state procedural waiver ruling. The standard announced in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1976), as extended by *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497 53 L.Ed.2d 594 (1977), is that a state court's ruling that defendant waived his federal constitutional claim as a matter of state procedural law bars federal habeas corpus review absent a showing of cause for the noncompliance and actual prejudice resulting from the alleged constitutional violation. The "cause and prejudice" test affords greater respect to the state procedural waiver ruling than did *Fay v. Noia,* supra, but the extent of this difference is not clear because the Court has left open for future resolution the precise definition of "cause" and "prejudice." However, *Fay* apparently remains viable in [some circumstances. In *Sykes, supra,* the Court indicated that in comparison with the broadly sweeping scope of *Fay,* "we do not choose to paint with a similarly broad brush here." *Wainwright v. Sykes, supra,* 433 U.S. at 88 n.12, 97 S.Ct. at 2507. For example, where the waiver is by defendant's own decision the *Fay* standard which requires a knowing and intelligent waiver by defendant arguably still applies. However, where the waiver relates to events during trial such as waived objections or counsel's tactical decisions the "cause and prejudice" standard applies. In Rinehart's case, assuming arguendo that the

*ans v. Maggio,* 557 F.2d 430 (5th Cir. 1977); *Jiminez v. Estelle,* 557 F.2d 506, 510–11 (5th Cir. 1977);[11] *United States v. Williams,* 544 F.2d 1215, 1217–18 (4th Cir. 1976). None of the participants in Bromwell's trial realized the constitutional implications of the practice of arguing a consolidation motion in the presence of a voir dire panel. That practice was a common one, attributable to the structural constraints of the Dorchester County Courthouse. As discussed above, there would seem to be no tactical advantage to a defendant in foregoing his objection to that practice. *See Marzullo v. Maryland,* 561 F.2d at 546 (4th Cir. 1977). Accordingly, it would appeal that there was "cause" for Bromwell's failure to object since neither he, nor his counsel, nor the prosecutor, nor even the trial judge conceived that any error was being committed when the breaking and entering and the larceny charges, and joinder of them for trial with the assault and battery and the handgun charges, were discussed in front of the voir dire panel. *Cf. Jiminez v. Estelle,* 557 F.2d 506, 511 (5th Cir. 1977). As for the "prejudice" prong of the exception, it is quite possible that such error could have contributed to Bromwell's conviction. In any event, Bromwell was subjected to a considerable disadvantage when the future jury members heard something discussed in a manner which violated his constitutional

rights. *See* the discussion, *infra.*[12] Thus, since "cause" and "prejudice" exist, the "independent and adequate state ground" doctrine of *Davis, Francis* and *Wainwright* does not bar review of petitioner's claim.

### The Right to an Impartial Jury

Having concluded that Bromwell did not waive his right under the Sixth and Fourteenth Amendments to a fair and impartial jury and is not barred from raising that issue herein because of a procedural default, the question arises as to whether that right was violated in this case.

■ Evidence relating to other charges against a defendant would generally be inadmissible under Maryland law in a case such as this in which the defendant did not testify. *See Harrison v. State,* 276 Md. 122, 153–58, 345 A.2d 830 (1975); *Presley v. State,* 224 Md. 550, 558, 168 A.2d 510 (1961), *cert. denied,* 368 U.S. 957, 82 S.Ct. 3, 99, 7 L.Ed.2d 389 (1962); *McCormick on Evidence* §§ 42, 190 (2d ed. 1972); *cf. United States v. Woods,* 484 F.2d 127, 133 *et seq.* (4th Cir. 1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); Fed.R. Evid. 404(b), 609. Allowing such information to come before the jury panel thus constituted error. Had Bromwell made a timely objection, he seemingly would have been entitled to have the consolidation mo-

"cause and prejudice" standard did apply, we believe such cause and prejudice exists here. Given the procedural context in which the asserted waiver occurred, the ineffectiveness of counsel, the fundamental character of constitutional rights at stake, and the overall lack of fairness of the proceedings (the judge's impropriety), we believe that sufficient "cause" existed to excuse the defendant for the noncompliance and that he was prejudiced by such constitutional violations. Accordingly, Rinehart is not barred from asserting his constitutional claims in this habeas action even under the "cause and prejudice" standard.

11. In *Jiminez* (557 F.2d at 511), Judge Tuttle wrote:

In light of the *Sykes* opinion which approves the Texas "correct contemporaneous objection" rule but which carries with it the "cause " exception, we consider it appropriate for the trial court to determine whether incompetence of the trial counsel in the state

court was the "cause" for the failure to object and whether such cause satisfies the exception announced in *Sykes.* The trial court will also determine whether prejudice resulted from the introductions of the uncounselled convictions at the sentencing trial before the jury.

12. *See also State v. Parnell,* 77 Wash.2d 503, 463 P.2d 134, 136 (1969), at which the majority opinion states:

It seems to us that there is much merit in the position taken by the Arkansas[2] and Oklahoma[3] courts, that the presence of a prospective juror at a preliminary hearing occurs so seldom and the chances of prejudicial impositions are so great that there should be a conclusive presumption of prejudice.

[2] *Lane v. State,* 168 Ark. 528, 270 S.W. 974 (1925).

[3] *Harvey v. State,* 46 Okl.Cr. 257, 287 P. 834 (1930).

tion argued outside of the hearing of the panel, or, once the damage was done, he may have had a right to have a new panel called. *See Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964) (per curiam); *State v. Parnell*, 77 Wash.2d 503, 463 P.2d 134 (1969).[13] Herein, in considering petitioner's request for relief under 28 U.S.C. § 2254, this Court's inquiry is of course limited to the question of whether the error that occurred attained the dimensions of a constitutional violation.

The Sixth Amendment right to an impartial jury was explicated in some detail by the Supreme Court in *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), a case involving widespread and inflammatory pre-trial publicity. The Court reviewed the English roots of the jury right and derived the following standards (at 723, 81 S.Ct. at 1642):

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. * * *

The adoption of such a rule, however, "cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner's life or liberty without due process of law." *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 [1941]. As stated in *Reynolds* [*Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244], the test is "whether the nature and strength of the opinion formed are such as in law necessarily . . . raise the presumption of partiality. The question thus presented is one of mixed law and fact . . . ." At p. 156. "The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside . . . . If a positive and decided opinion had been formed, he would have been incompetent even though it had not been expressed." At p. 157. As was stated in *Brown v. Allen*, 344 U.S. 443, 507, 73 S.Ct. 397, 97 L.Ed. 469 [1953], the "so-called mixed questions or the application of constitutional principles to the facts as found leave the duty of adjudication with the federal judge." It was, therefore, the duty of the Court of Appeals to independently evaluate the voir dire testimony of the impaneled jurors.

---

**13.** State courts have apparently split on whether a prospective juror's presence at an earlier hearing involving a criminal defendant disqualifies him from jury service. *Compare, e. g., Smith v. State*, 207 Ala. 428, 93 So. 397 (1922) (fact that some of jurors were present at earlier trial and knew verdict did not disqualify them) *with, e. g., Lane v. State*, 168 Ark. 528, 270 S.W. 974, 976 (1925) (juror's presence at preliminary hearing, *inter alia*, disqualified him notwithstanding that he testified to having no bias). *See generally* Annot., 6 A.L.R.3d 519, 526–31 (1966). However, the *Leonard* holding is instructive. In *Leonard*, the defendant was tried successively in two different federal trials before two juries which had no common members. Part of the voir dire panel for the second case was present in the courtroom when the jury in the first case announced a verdict of guilty. The jury which found the defendant guilty in the second case contained five members who had heard the verdict in the first case. The Supreme Court agreed with the Solicitor General's confession of error that it was erroneous for the trial court to overrule the defendant's objection to selecting jurors from among those who had heard the first verdict. The *Leonard* opinion does not indicate whether it constitutes only a discharge by the Supreme Court of its supervisory power over lower federal courts, or a constitutional determination.

Some courts have held that a defendant who neglects to make a timely objection or to challenge jurors on voir dire examination because of their prior exposure to certain facts about the defendant or the case is regarded as having waived any objection to the jurors' qualifications. *See, e. g., Willie v. State*, 169 Tex.Cr.R. 393, 334 S.W.2d 159, 160 (1960), in which "the state's attorney announced to the court that it had four cases against [the defendant] and would be ready in [one of them] subject to the witness being present." *See generally* Annot., 6 A.L.R.3d 519, 531–34 (1966). However, for reasons stated *supra* in the body of this opinion, Bromwell cannot be deemed to have waived any right with regard to the discussion of the handgun charge.

The Court also approved the established rule that findings of impartiality should only be set aside where juror prejudice is "manifest." *Id.* at 723–24, 81 S.Ct. 1639. In subsequent cases, the Supreme Court has presumed prejudice to a defendant in cases of rampant and inflammatory pre-trial publicity. *See Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). In *Sheppard,* Mr. Justice Clark wrote (at 352, 86 S.Ct. at 1517):

> Only last Term in *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), we set aside a conviction despite the absence of any showing of prejudice. We said there:
>
>> It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process." At 542–543, 85 S.Ct. 1628.

More recently, in *Murphy v. Florida,* 421 U.S. 794 (1975), Mr. Justice Marshall noted (at 798–99, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589):

> Prejudice was presumed in the circumstances under which the trials in *Rideau,* *Estes,* and *Sheppard* were held * * * *

In *Murphy,* the Supreme Court reaffirmed the principles of *Irvin v. Dowd* in the course of holding that the jurors' exposure to news accounts of the defendant's prior convictions did not deprive him of due process. In that case, the Court reviewed the voir dire examination of the jury panel in some detail for evidence of hostility or partiality on the part of the jurors, and concluded (at 803, 95 S.Ct. at 2038):

> In sum, we are unable to conclude, in the circumstances presented in this case, that petitioner did not receive a fair trial. Petitioner has failed to show that the setting of the trial was inherently prejudicial or that the jury-selection process of which he complains permits an inference of actual prejudice.

The Fourth Circuit has held recently that a state prisoner is entitled to habeas corpus relief when his right to an impartial jury has been impaired. *Wall v. Superintendent,* 553 F.2d 359 (4th Cir. 1977). In *Wall,* five jurors at the petitioner's trial for burglary had served twelve days earlier in another case in which the petitioner was an alibi witness for a defendant who had been found guilty. In that prior trial, the jurors had been exposed to information prejudicial to the petitioner. In the course of granting habeas corpus relief, Judge Bryan stated (at 360):

> Our paramount concern is not the voir dire, but rather the flagrant *per se* incursions upon Wall's rights to trial by an impartial jury and to witness-confrontation, occasioned when jurors at the *Pugh* trial, who there had become apprised of or exposed to sworn information prejudicial to Wall that could not have been introduced at his own trial, were permitted to serve on the *Wall* jury. * * * [14]

---

**14.** *See also Mottram v. Murch,* 458 F.2d 626, 630 (1st Cir.), *rev'd on other grounds,* 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), in which four jurors sat on both of defendant's severed trials and in which Judge Aldrich concluded that in that case, "[p]ermitting four jurors to sit on both trials created such a likelihood of prejudice to the petitioner as to deny him due process."

*But see United States v. Tweed,* 503 F.2d 1127 (7th Cir. 1974), in which Judge Pell held that a jury panel's awareness, through a question of the trial court on voir dire examination, that defendant had been involved in a previous trial in the same court, did not impair the defendant's right to a fair trial. In so doing, Judge Pell wrote (at 1129) that "the veniremen could not have known whether Tweed was a plaintiff, a defendant, or a witness in the earlier trial" or whether that trial was criminal or civil and concluded that "[n]o prejudice to Tweed's right to a fair trial has been demonstrated * * *."

*See also Fletcher v. United States,* 334 F.2d 584 (9th Cir.), *cert. denied,* 379 U.S. 948, 85 S.Ct. 445, 13 L.Ed.2d 545 (1964), in which the Court held that no prejudice had been shown by the empanelling and service, after thorough voir dire examination, of three jurors who had heard the defendant Fletcher referred to by a

In *Donovan v. Davis*, 558 F.2d 201 (4th Cir. 1977), the Fourth Circuit held that Donovan had been denied his federal constitutional right to trial by an impartial jury because seven members of the jury which had convicted him of attempted rape had served a week earlier in another trial involving him in the same Virginia court. In that earlier trial, Donovan had been acquitted on the charge of unauthorized use of a truck. Some of the evidence introduced during that trial involved Donovan's use of that vehicle "to take the girls home" and of other vehicles to take his girlfriend riding and to "chase" the wife of his father's employer. A week after his acquittal on the motor vehicle charge, Donovan was brought to trial in the same court on the charge of attempted rape of his first cousin. Immediately prior to that second trial, defense counsel moved to quash the jury venire since several of its members had served on the jury in Donovan's earlier trial. The state trial court denied that motion. During voir dire, the trial judge did ask the panel whether any individual member believed that he had been influenced by exposure to the earlier trial. None of the members of the panel responded. Of the twelve jurors eventually selected, seven had served on the jury in Donovan's previous trial. At the second trial, the prosecutrix testified that Donovan came to her home and attacked her while she was dressing for school. Donovan testified that the prosecutrix had enticed him to her bedroom and consented to his sexual advances. At the conclusion of the trial before the jury retired to deliberate, the trial judge in-

witness as a narcotics peddler in a previous, unrelated criminal trial against another defendant held about three weeks prior to the trial of Fletcher. In that case, Judge Hamlin (at 587–88) wrote:

During this [the voir dire] examination it was disclosed that some jurors had served in prior criminal cases and in narcotic cases. Counsel for defendant made no attempt to examine the jurors on this subject and he suggested no questions to be asked by the court thereon.

The few questions in the *Wilson* [the prior] case referring to appellant were a minute part of a 280-page transcript of the proceedings therein. The reference to appellant therein, in any event, even if recalled by any of the jurors was somewhat similar to a statement in a newspaper which a juror may have read. It in no way compared to the positive detailed charge contained in the information that appellant had at a definite time and place sold narcotics and to the positive testimony of the government's witnesses as to the details of this sale.

\* \* \* \* \* \*

We hold that no prejudice to the appellant has been shown.

Concurring Judge Hamley stated (at 588–89):

Had the information which came to the three jurors in the previous *Wilson* trial, to the effect that appellant Alcie Fletcher "\* \* \* is a narcotics peddler. \* \* \*," come from a witness who did not subsequently testify to the same effect in the *Fletcher* trial, I would feel that the failure of counsel for Fletcher to be advised of this occurrence deprived him, in the *Fletcher* trial, of the opportunity to exercise, effectively and intelligently, the peremptory challenges available to him under Rule 24(b), Federal Rules of Criminal Procedure. This in turn, in my view, would have constituted a denial of a fair trial, and hence a deprivation of due process of law guaranteed by the Fifth Amendment.

My view, under that hypothesis, would be unaffected by the fact that the *voir dire* examination was adequate in view of the facts then known; that the jurors answered truthfully to the questions on *voir dire*, none being of a kind which would necessarily call for a disclosure of the incident in the *Wilson* case; that no misconduct on the part of the Government was shown; that no actual prejudice on the part of the three jurors was shown; or that counsel for Fletcher used only eight of his ten peremptory challenges.

But here the witness, Caron B. Durel, a federal narcotics agent, who testified in the *Wilson* case that Fletcher is a narcotics peddler, testified to similar effect in the *Fletcher* trial. Moreover, in the *Fletcher* trial Durel supported his appraisal of Fletcher with his eyewitness account of the actual narcotics transaction, involving a sale by Fletcher to one James Steward, upon which the prosecution of Fletcher was based.

In the light of this circumstance, I do not see how it can be said that the denial of Fletcher's right to remove the three jurors by peremptory challenge brought about by the undisclosed incident of the *Wilson* trial, affected the fairness of the *Fletcher* trial. Those three jurors who heard Durel make this statement in the *Wilson* trial twenty days previously, or any jurors who would have replaced them, heard or would have heard the same statement from the same witness at the *Fletcher* trial.

structed the jurors to erase from their memories evidence adduced at the first trial. The jury subsequently found Donovan guilty of attempted rape.

Judge Winter, writing for a unanimous panel, concluded that it was likely that the jurors at the second trial were influenced by evidence presented at the first trial, and stated:

Certainly, it would have been far easier for members of the jury to believe the prosecutrix and to disbelieve the defendant if they had the impression that Donovan was a putative Don Juan. We think that the jury could well have concluded that, from the evidence that was presented at the first trial, this was Donovan's inclination, and therefore we conclude that there was a substantial likelihood that the seven jurors who sat in both trials were not indifferent in appraising the evidence at the second.

558 F.2d at 203. In addition, Judge Winter held that the trial judge's instruction at the end of the second trial did not cure any prejudice "arising from the joint service of the seven jurors." *Id.* at 203. Additionally, Judge Winter wrote:

The *voir dire* was conducted before any evidence was presented at the second trial and the members of that venire were not told what issues the case would present. The members could quite honestly remain silent in response to a question about whether they would be influenced in arriving at a verdict at the second trial by what they had previously heard—thereby indicating that they would not be affected—and yet be influenced when the attempted rape case was submitted to them.

*Id.* After reviewing *Leonard, Mottram,* and *Wall,* the Court applied the standards established by them to Donovan's case and concluded:

Although none of these cases is directly on point, each offers support for the conclusion that we reach. In short, proceed-

ing under the premise that a defendant is entitled to an unbiased jury, we think that the facts indicate a violation of Donovan's due process rights. By allowing seven jurors to sit on both of Donovan's trials, the second jury was exposed to evidence outside of the record which created a substantial likelihood that they would be predisposed to disbelieve Donovan, thereby undermining his defense.
* * *

*Id.* at 204.

*Marzullo v. Maryland,* discussed *supra* at pp. 110–111 as to waiver, is also relevant with regard to an assessment of Bromwell's constitutional rights. In *Marzullo* Judge Butzner commented (at 546):

Before the trial, Marzullo's attorney learned at a bench conference that the State could not proceed on the first indictment. There is no doubt that he also was aware of the conflicting accounts as to what took place in the parked car, and he should have realized that the defense rested almost entirely on the jury's acceptance of Marzullo's testimony. The information about the first rape charge had no probative value and could only serve to discredit Marzullo; therefore, it was important to withhold from the jury all prejudicial reference to it. Nevertheless, the attorney did not move to exclude the jury during the interrogation of the prosecuting witness about the crime charged in the first indictment.

Furthermore, the attorney's conduct at the voir dire again failed to protect Marzullo from the prejudicial effects of the jury's exposure to the first rape charge. Before the jurors were even questioned, he assured the court that a panel could be selected. At that time, he could not possibly have known that the colloquy about the first indictment did not bias any of the jurors. Furthermore, he never asked the court to instruct the jury that remarks about the dismissed rape charge could not be considered in their deliberation about the second indictment.

The within case does not arise in the context of an attack on defendant's trial counsel. Herein trial counsel followed an established court practice. Further, in the within case, the other pending charges—*i. e.*, for breaking and entering and larceny—were only briefly mentioned before the jury panel. However, during that discussion the prosecutor informed the trial judge that that charge was "related to" the handgun law violation.[15] Shortly thereafter, Judge Mace conducted a voir dire examination of the panel. Among other questions, the Court asked the panel whether any of them had formed or expressed an opinion as to the defendant's guilt or innocence. Three prospective jurors were then excused. The trial court also asked whether the veniremen knew of any reason why they could not render an impartial verdict based solely on the evidence. The question elicited no response from the panel. Bromwell did not challenge any of the veniremen for cause. Such failure by Bromwell to challenge any members of the voir dire panel for cause does not in and of itself constitute a waiver of his constitutional right to a fair and impartial trial. But it is "strong evidence that he was convinced the jurors were not biased and had not formed any opinions as to his guilt." *Beck v. Washington,* 369 U.S. 541, 558, 82 S.Ct. 955, 964, 8 L.Ed.2d 98 (1962).

While there is absent from this case the egregious unfairness or almost certain prejudice that existed in *Donovan, Wall, Murch* and *Marzullo*, nevertheless the conduct of the consolidation motion prior to Bromwell's trial may well have impermissibly affected the jury's consideration of the handgun law charge. The State's case concerning that charge consisted entirely of circumstantial evidence: a gun was found in the police car which had transported Bromwell to the jail during an inspection about four hours after Bromwell was in the car.[16] The prosecutor's statement that the

---

**15.** The entire discussion was as follows:

MR. YATES [State's Attorney]: * * * Now, sir, I am going to call another case, the same man, the same Defendant, and it is for consolidation, 3088.

MR. SADOFF [Defense Counsel]: We object to consolidation, Your Honor.

MR. YATES: Your Honor, I understand that it is the prerogative—

THE COURT: 3088.

THE CLERK: That is in for tomorrow's assignment, sir.

THE COURT: That is breaking and entering a dwelling house.

MR. YATES: I said breaking and entering a storeroom, you will see the criminal information, she made a mistake.

THE COURT: Are they related?

MR. YATES: The handgun is related to that one, yes, sir, the one on the handgun is related to that. The assault charge, of course, was a different incident. It is the State's understanding that we will try the case on two warrants.

THE COURT: Yes, sir. The case that is in the assignment for tomorrow, 3088, is—

MR. YATES: I guess we can try that tomorrow.

THE COURT: I am not going to grant the motion to consolidate in view of objection of the defense counsel.

*State v. Bromwell,* Crim. Nos. 3086 & 3087 (Cir. Ct. Dorch. Co. 1975), Tr. 4–5.

**16.** Officer Harris testified that he did not search Bromwell before he placed Bromwell in his police car (Tr. at 59), but that he did not transport anyone else besides Bromwell in the police car that night between the hour he commenced his duty and the time he arrested Bromwell (Tr. 47), and that he did lock the car before he exited it after his arrival at the scene of Bromwell's second tussle with Parks. While Bromwell was fingerprinted (Tr. 61, 74–75), seemingly either there were no fingerprints taken from the gun or no fingerprinting of the gun took place (Tr. 62) (Post-Conviction Tr. 12) (all transcript page references are to the trial transcript unless otherwise indicated).

Judge Mace, while sentencing Bromwell, characterized "the evidence [in the handgun case]" as "overwhelming" and "perfectly clear. The gun was not there. You entered the police car, went to the sheriff's office, and when you got out the gun was on the seat. It is an inescapable conclusion." (Tr. 92).

The Court of Special Appeals, in affirming Bromwell's conviction, wrote (slip op. at 3):

We find no merit in the contention that there was insufficient evidence "to sustain a conviction of a handgun violation." Officer *Harris testified that when he went to the* trooper's rescue he locked his police vehicle and after arresting the appellant he returned to the vehicle, unlocked it and placed appel-

handgun charge was related to the non-consolidated breaking and entering and larceny charge was made without contradiction in response to a question of the trial court. That statement was neither inflammatory per se nor long in duration. However, the fact that it was made in Court by the prosecutor bestowed upon it a certain aura of authority not present in newspaper or broadcast reports of a prior conviction. In addition, the statement was made immediately before trial and bore directly on one of the issues the jury was soon to decide. The effect of that statement may have been reinforced when a state witness later testified that the gun found in Officer Harris' car had been reported stolen.[17] Bromwell did not take the stand to deny any of the charges. A juror, mindful of the trial judge's admonition not to hold Bromwell's failure to testify against him, *cf. Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), may perhaps have not excluded from his memory the prosecutor's pre-trial statement linking the handgun to Bromwell.

■ In sum, the presence of the jury panel at the consolidation motion could well have been prejudicial to Bromwell and have impaired his right to a fair and impartial trial on the handgun charge, as guaranteed by the Sixth and Fourteenth Amendments. No one can ever be certain that prejudice did in fact exist. But there is a substantial likelihood that it did so exist. That substantial likelihood would seem to establish sufficient possibility of prejudice to meet the "prejudice" prong of the "cause"–"prejudice" exception stated in *Francis* and in *Wainwright,* insofar as Bromwell's handgun conviction is concerned.

■ With respect to the assault and battery charge, however, the pre-trial error was clearly harmless in the light of the convincing and uncontroverted testimony of Trooper Parks and Officer Harris. There does not exist a reasonable doubt that the jury would have reached a different conclusion in the absence of such error. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[18]

Petitioner's quest for habeas corpus relief (a) with respect to the handgun violation will be granted, and (b) with respect to the assault and battery charge will be denied.

---

**17.** Deputy Thomas Roe testified that Officer Harris turned the gun over to him and that, by comparing the serial number, he determined that it had been reported stolen. At that point in Deputy Roe's testimony, defense counsel interrupted and requested a bench conference. After the bench conference, the trial court instructed the jury to disregard the testimony that the gun had been stolen. *See* Tr. 64–65.

lant in the rear seat without searching him and drove to the jail. Officer Harris further testified that appellant was the only person he had arrested that night or transported in his police car. Thus, it is perfectly apparent that the only rational inference that could be drawn under the circumstances was the one drawn by the jury that appellant had the gun on his person at the time of his arrest and endeavored to conceal it in the police car after his arrest. * * *

There clearly was a sufficiency of evidence to support the jury's finding of guilt beyond a reasonable doubt upon the handgun charge. But the evidence was only "overwhelming" and the "inference" as to Bromwell having left the gun in the car was only compelled if all of Officer Harris' testimony including his statement about his not having left the car unlocked at the scene of the second Parks-Bromwell tussle is accepted. There is no way to know, however, whether the jury would have accepted all of that testimony if its members had not heard of the larceny-breaking and entering case and the prosecutor's remark about the latter's connection with the handgun case.

**18.** *See also Brown v. United States,* 411 U.S. 223, 230–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (evidence admitted in violation of *Bruton* rule held harmless error); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (admission of confession held harmless); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (*Bruton* violation held harmless); *United States v. Arriagada,* 451 F.2d 487 (4th Cir. 1971), *cert. denied,* 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1972) (harmless error for judge to answer jury's inquiry without defendant present); *United States v. Green,* 432 F.2d 551, 552 (4th Cir. 1970).

APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MEMORANDUM AND ORDER

Plaintiff's contentions herein as to (a) insufficiency of evidence in connection with his conviction in the Circuit Court for Dorchester County upon assault and possession of handgun charges and (b) jury instructions in his trial for the same are without merit. The insufficiency of evidence contention as to the handgun conviction clearly does not state any claim of constitutional dimension. *See Grundler v. North Carolina*, 283 F.2d 798 (4th Cir.), *cert. denied*, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960). The jury instructions as to exceptions in Maryland's Handgun Law did not place any unconstitutional burden on defendant or violate the principles set forth in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Further, in any event, in this case such error (if there had been any) in those instructions in that latter regard would have been, in view of the record, harmless error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Plaintiff does not appear to press any contention herein re unlawful seizure of the gun. However, not only would any such claim lack substantive merit, but it may not be raised herein. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Plaintiff's contentions with regard to the trial court's consideration of a prior conviction seemingly on appeal both at the dates of sentencing in the trial court and of his post-conviction proceeding would not appear to have merit. *Cf.* Fed.R.Evid. 609(e) (evidence of conviction admissible for impeachment purposes even if an appeal is pending). *See also* the Advisory Committee's Note and cases cited therein. However, the facts surrounding that contention are far from clear to this Court. *See* T.Tr. pp. 4–5, P.C.Tr. pp. 8–10, 84 *et seq.* The same lack of clarity (see those same pages in the trial and post-conviction transcripts) pertains, and perhaps more particularly so, with reference to the mention before the voir dire panel of a pending breaking-and-entering-a-dwelling-house case seemingly in the trial calendar of the Circuit Court for Dorchester County for the day after plaintiff's trial upon the assault and Maryland Handgun Law charges. In order to clarify those facts and factual contentions and also to brief and argue the law in connection with the same this Court has today appointed Jess G. Schiffmann, Esq., Assistant Public Defender, to represent plaintiff herein. This Court will confer with Mr. Schiffmann and John P. Stafford, Jr., Esq., Attorney General for the State of Maryland on April 5, 1977 at 4:30 p. m. and establish a schedule for proceedings in this case.

The Clerk is directed to send copies hereof to plaintiff at the Maryland House of Correction and to Messrs. Schiffmann and Stafford. It is so ORDERED, this 15th day of March, 1977.

Frank A. Kaufman
s/ Frank A. Kaufman
United States District Judge