Pablo Ramos JIMINEZ, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 76–3128.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1977.

C. David Evans, Allen F. Cazier, San Antonio, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Walter C. Prentice, Asst. Atty. Gen., David M. Kendall, First Asst. Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before TUTTLE, GOLDBERG and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

The appellant here seeks a reversal of the judgment of the district court denying habeas corpus relief from an alleged illegal twenty-year sentence which was determined by the jury after hearing evidence of prior convictions under the Texas Enhancement Statute. The state relies upon its rule that unless a defendant contemporaneously objects to the introduction of evidence against him on the very ground on which he later seeks relief on appeal or on habeas corpus, such ground is not later cognizable, e. g., *Aldrighetti v. State,* 507 S.W.2d 770 (Tex.Cr.App.1974); *Spead v. State,* 500 S.W.2d 112 (Tex.Cr.App.1973); *Branch v. State,* 477 S.W.2d 893 (Tex.Cr.App.1972). This rule, which we might call the "correct contemporaneous objection rule," is hermetically sealed by its observance in state habeas corpus procedure, which follows the same doctrine and forecloses collateral attack in the same fashion as direct review. *E. g., Ex parte Gill,* 509 S.W.2d 357 (Tex.Cr.App. 1974); *Ex parte Bagley,* 509 S.W.2d 332 (Tex.Cr.App.1974).

Appellant Jiminez was convicted by a Texas jury of possession of heroin. Pursuant to the state's bifurcated trial/sentence procedures, the jury then heard additional evidence for the purpose of assessing punishment. The only evidence presented by the state was the fact that Jiminez had twice been convicted of felonies in Michigan. A state habeas court found, and the state conceded in its brief and at oral argument, that with respect to the Michigan convictions, Jiminez (1) was not represented by counsel; (2) was indigent; (3) was not informed of his right to have counsel appointed; and (4) did not waive the assistance of counsel.

Jiminez' counsel objected to the evidence of the former convictions on the ground that it was hearsay and that it violated Jiminez' confrontation clause rights, but counsel did not contend that use of prior uncounselled convictions for the purpose of setting punishment was a violation of due process.

The United States district court denied relief, holding that Jiminez should be estopped from complaining about the state's use of the prior convictions. The district court based its ruling on the mistaken belief that Jiminez had himself "opened the door" for the state by testifying about the prior convictions. This finding was clearly erroneous: Jiminez never testified until the evidence had first been introduced, over his

objection, by the state. Nevertheless, the state now argues, the judgment of the district court should be affirmed because Jiminez either (1) intentionally waived his constitutional right not to have the jury consider the uncounselled convictions in assessing punishment; or (2) committed an inexcusable procedural default which should be held to bar adjudication of his claim by a federal habeas court.

## I. FROM WAIVER TO PROCEDURAL DEFAULT

As originally established by *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), waiver of constitutional rights was a consensual concept, depending on "intentional relinquishment or abandonment of a known right," 304 U.S. at 464, 58 S.Ct. at 1023. The person making the waiver had to know he had the right and had to deliberately forego its assertion. Later opinions transposed "waiver" terminology to cases involving procedural default or forfeiture.[1] In this type of case, the only known fact is that the defendant failed to claim his rights at the time when a procedural rule requires them to be asserted upon penalty of forfeiture; why he failed to act, or even whether he knew that he might claim the right in question, is immaterial to the operation of the forfeiture rule. A defendant who failed to claim constitutional protections at appropriate junctures in the trial process was often said to have "waived" those rights. This would be high fiction, of course, under the *Johnson* standard because in a forfeiture case the "waiver" is a penalty enforced by the court, unrelated to whether the failure was a considered tactical choice or plea bargain made by the defendant and his lawyer.

The confusion was understandable, because for a time the same standard was used in federal habeas corpus to govern both (1) the finding of a *Johnson v. Zerbst* waiver, and (2) the determination whether a procedural default grave enough to preclude habeas adjudication of the merits of a belatedly asserted claim had taken place. Whether the default occurred in federal or state court, the operative term became "deliberate bypass," reflecting the *Johnson v. Zerbst* emphasis on considered choice:

"We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state court remedies. But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in *Johnson v. Zerbst* . . . furnishes the controlling standard."

*Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963) (collateral attack in federal court after procedural default in state court); *accord, Henry v. Mississippi,* 379 U.S. 443, 451–52, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (direct review in federal court after procedural default in state court); *Kaufman v. United States,* 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) (collateral review in federal court after procedural default in federal trial court).

Recent Supreme Court decisions, however, establish that the *Johnson v. Zerbst,* standard will no longer govern all procedural default cases. *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) began the process. In *Davis,* the Court held—as a matter of statutory construction—that the scope of section 2255

---

1. *See, e. g., Irvin v. Dowd,* 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959); *Daniels v. Allen,* 344 U.S. 443, 486, 73 S.Ct. 437, 97 L.Ed. 469 (1953). For a discussion of the doctrinal implications of the distinction between waiver and procedural default in habeas proceedings, see Hart, The Supreme Court, 1958 Term—Foreword: The Time Chart of the Justices, 73 Harv.L.Rev. 84, 101–119 (1959). Professor

Hart concluded: "There is room . . . not only for a doctrine of conscious waiver of federal constitutional rights but for a distinct doctrine of inadvertent loss of them by inexcusable procedural default." *Id.* at 118. This distinction was the touchstone of the concurring opinion of Justices Powell and Stewart in *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), discussed in Part II *infra.*

review was intended by Congress to be no greater than the availability of relief in normal criminal proceedings. The Court therefore held that a challenge to the composition of a grand jury was not cognizable under section 2255 unless the conditions of Rule 12 of the Federal Rules of Criminal Procedure, which provides that failure to raise such an objection before trial "constitutes a waiver thereof" unless the court grants relief "for cause shown," were met.

*Davis* was extended to state cases in *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) *aff'g Newman v. Henderson,* 496 F.2d 896 (5th Cir. 1974). There, a state prisoner sought federal habeas corpus relief on the ground that blacks had been unconstitutionally excluded from the grand jury that indicted him. He had not raised the claim at his state trial, despite state law requiring challenges to the grand jury's composition to be made before trial. Otherwise, the law provided, "all such objections shall be considered as waived and shall not afterwards be urged or heard." The Supreme Court affirmed our decision denying relief:

> "We conclude . . . that the Court of Appeals was correct in holding that the rule of *Davis v. United States* applies with equal force when a federal court is asked in a habeas corpus proceeding to overturn a state-court conviction because of an allegedly unconstitutional grand jury indictment. In a collateral attack upon a conviction that rule requires . . . not only a showing of 'cause' for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice."

425 U.S. at 542, 96 S.Ct. at 1711.

*Davis* and *Francis* unmistakably signal a partial departure from the rigorous test of *Johnson v. Zerbst* in forfeiture cases and, now, the Supreme Court has come full circle in *Wainwright v. Sykes,* —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594. The Court has extended the contemporaneous objection rule to a case in which the basis of the habeas claim was so fundamental as the voluntariness of a confession:

> "We therefore conclude that Florida procedure did, consistently with the United States Constitution, require that petitioner's confession be challenged at trial or not at all, and thus his failure to timely object to its admission amounted to an independent and adequate state procedural ground which would have prevented direct review here. See *Henry v. Mississippi,* 379 U.S. 443 [85 S.Ct. 564, 13 L.Ed.2d 408] (1965)." ——U.S. at ——, 97 S.Ct. at 2506.

The Court does, however, recognize that rigid application of that rule would be too draconian a forfeiture to be acceptable under our system of justice. The Court, therefore, provides a failsafe mechanism to prevent a defendant's becoming the victim of a miscarriage of justice. This provision is contained in the Court's precise question which it posed and answered in *Sykes.* Having, in that case, concluded that a failure of the habeas petitioner to make timely objection as required by state law constituted a waiver, the Court said:

> "We thus come to the crux of this case. Shall the rule of *Francis v. Henderson,* supra, barring federal habeas review *absent a showing of 'cause' and 'prejudice'* attendant to a state procedural waiver, be applied to a waived objection to the admission of a confession at trial? We answer that question in the affirmative. [Emphasis added.]." —— U.S. at ——, 97 S.Ct. at 2506.

(Footnote omitted).

The Court thereafter observed:

> "The 'cause' and 'prejudice' exception of the *Francis* rule will afford an adequate guarantee, we think, that the rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice. Whatever precise content may be given those terms by later cases, we feel confident in holding without further elaboration that they do not exist here.

Respondent has advanced no explanation whatever for his failure to object at trial, and, as the proceeding unfolded, the trial judge is certainly not to be faulted for failing to question the admission of the confession himself. The other evidence of guilt presented at trial, moreover, was substantial to a degree that would negate any possibility of actual prejudice resulting to the respondent from the admission of his inculpatory statement."

■ It is clear that *Sykes* mandates a holding that the Texas procedural rule is applicable to this case unless it falls within the exception that the failure of Jiminez' trial lawyer in the state court to object to the evidence of his prior uncounselled convictions, should be excused for cause, and that the error resulted in actual prejudice to him.

## II. "CAUSE" AND "PREJUDICE"

■ We consider these two critical expressions in reverse order. As we understand the Court's ruling in *Sykes,* a habeas petitioner like Jiminez cannot base his petition in the federal court on the proposition that he had been illegally sentenced because the state introduced evidence of uncounselled prior convictions to which he did not then object on that ground unless he can show to the satisfaction of the habeas court that there was adequate "cause" for his failure to object to the improper evidence and unless he can satisfy the habeas court that the admission of the evidence resulted in actual "prejudice" to him. There can be little doubt that the error prejudiced Jiminez. This follows from the concurrence of two facts. The first is that there was no doubt of the unconstitutionality of the state's use of Jiminez' prior convictions at his 1972 trial, for some five years previously, the Supreme Court had held that a prior conviction, void under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), because uncounselled, could not constitutionally be used to enhance a sentence imposed in accordance with a habitual offender statute. *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

Eight months before Jiminez' trial, the Supreme Court held that a federal judge could not consider prior uncounselled convictions for purposes of determining sentence for a federal crime. *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and six months before Jiminez' trial, the Supreme Court held in another Texas case that prior uncounselled convictions could not constitutionally be used for purposes of impeaching a defendant's credibility. *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). Thus, objection to the introduction of these two prior uncounselled convictions would clearly have prevented them from being considered by the trial court on its sentencing procedure. The second fact that strongly indicates prejudice is that the state's proof of these two prior convictions was the only evidence which was introduced at the sentencing part of the trial for consideration by jury.

Referring now to the matter of "cause" we note that the Court in its *Sykes* opinion gives very little guidance as to what constitutes an adequate "showing of cause" for the petitioner's failure to make a contemporaneous objection on a proper ground before the trial court. The court speaks of "cause" and the reason for providing for it as a proper exception to the contemporaneous objection rule in terms of "a miscarriage of justice." The term actually had its origin, as explained by the court in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216, from Federal Rule of Criminal Procedure 12(b)(2) which provides that a challenge to the grand jury must be raised "by motion before trial." The court which had before it the question of whether this rule should prevail over the *Fay v. Noia* concept of waiver, concluded that: "Review of the claim should be barred on habeas, as on direct appeal, absent a showing of cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes,* —— U.S. at ——, 97 S.Ct. at 2505.

Thus, we have here a case in which it is claimed that prejudice is shown by the receipt of evidence at the state court trial

which, upon proper objection would have been excluded. The record further discloses that objection was actually made to the introduction of this same evidence (the uncounselled convictions) on two bases which were not supportable. The habeas corpus court did not consider the question whether the failure of Jiminez' lawyer to object on the proper ground should be excused for "cause" because it found that evidence of the prior convictions were admissible because Jiminez had "opened the door" on direct examination. As pointed out above, we have held this fact determination by the trial court to have been clearly erroneous. It must thus be decided whether the circumstances of this case bring it within the exception which the Supreme Court has noted to its new rule to prevent a miscarriage of justice.

Appellant could make an argument to the effect that this is a classic case in which a holding that the federal habeas court cannot consider the error in the admission of the uncounselled convictions would run counter to the Supreme Court's provision of the failsafe mechanism of permitting him to show that rigid application of the Rule would indeed result in a miscarriage of justice. There is some evidence that Jiminez told one of his lawyers at the state court trial that he had not been represented by counsel in the earlier convictions. Under these circumstances, it can be argued that counsel should have known the controlling law and that it is inconceivable that since he knew the law, which would have made his objection controlling in the case, he would not object on the ground that the former convictions were void and could not be considered for enhancement purposes; there clearly was no tactical or strategic advantage to be gained by counsel's failure to make the objection. This set of circumstances makes it clear that counsel either ignored the grounds for objection or he did not comprehend their importance.

In light of the *Sykes* opinion which approves the Texas "correct contemporaneous objection" rule but which carries with it the "cause" exception, we consider it appropriate for the trial court to determine whether incompetence of the trial counsel in the state court was the "cause" for the failure to object and whether such cause satisfies the exception announced in *Sykes.* The trial court will also determine whether prejudice resulted from the introductions of the uncounselled convictions at the sentencing trial before the jury.

The judgment is REVERSED and the case is REMANDED to the trial court for further proceedings not inconsistent with this opinion.