Gary TYLER, Petitioner-Appellant,

v.

C. Paul PHELPS, Director, Department of Corrections, and Attorney General of the State of Louisiana, William Guste, Jr., Respondents-Appellees.

No. 79–3093.

United States Court of Appeals, Fifth Circuit.

July 24, 1980.

Jack Peebles, New Orleans, La., for petitioner-appellant.

Abbott J. Reeves, Asst. Dist. Atty., Research & Appeals, Gretna, La., for respondents-appellees.

Before COLEMAN, Chief Judge, and PECK * and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge.

Gary Tyler, appellant, was convicted of first degree murder in Louisiana state court and sentenced to die. On appeal, the death penalty [1] was vacated but the conviction was affirmed, *State v. Tyler*, 342 So.2d 574 (La.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). After unsuccessfully pursuing state habeas corpus, *Tyler v. Phelps*, 353 So.2d 1050 (La.1978), this 28 U.S.C. § 2254 action was filed. The district court denied relief and the petitioner appeals. We reverse and remand.

At the time of the offense, Gary Tyler was a 16-year-old student at Destrehan High School. The morning of the murder had been marked by general turmoil and racial tensions, and Tyler had been suspended from school. Later in the day he was

---

* Circuit Judge of the Sixth Circuit, sitting by designation.

1. The Louisiana statute imposing a mandatory death penalty for persons found guilty of first degree murder was declared unconstitutional in *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). *Roberts* was decided after Tyler's trial, but before the Louisiana Supreme Court reviewed his conviction.

Because of *Roberts*, Tyler's death sentence was vacated and life imprisonment without eligibility for parole, probation or suspension of sentence for twenty years was imposed. *State v. Tyler*, 342 So.2d 574, 577–78 (La.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). *See also State v. Jenkins*, 340 So.2d 157 (La.1976).

picked up and taken back to school by a deputy sheriff who suspected he was truant. By the time Tyler and the deputy arrived at the school, the school officials had decided to close the school and send all students home. After being told to go home immediately, Tyler boarded a bus loaded with other students.

Upon leaving the school grounds, the bus was met with jeering and rock-throwing by the assembled crowd. As the bus proceeded, someone on the bus shot a .45 caliber automatic revolver into the crowd. The bullet struck and killed one boy and grazed another. It was alleged that Tyler shot the pistol and the jury so found in convicting him.

In his appeal to this court, Tyler raises two issues, both of which were raised on direct appeal and in his petition for state habeas: first, he contends he was convicted on the basis of an unconstitutional jury charge; second, he contends there is insufficient evidence to convict him of first degree murder.

This case, like *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), involves the constitutionality of a state charge on presumptions. Unlike *Sandstrom*, however, this case also involves the question of whether habeas corpus relief is available to a defendant who did not object to the charge at trial. Accordingly, this court must determine first whether the charge as given was unconstitutional, and second whether any unconstitutionality must go unredressed because of the rule articulated in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

*Did the Charge on Presumptions Unconstitutionally Shift the Burden of Proof to the Defendant?*

In *Sandstrom v. Montana*, the defendant was charged with "deliberate homicide," Mont.Code Ann. § 45–5–102 (1978), which requires that the homicide be committed purposely or knowingly. The defendant admitted that he killed the victim, but denied that he did so purposely or knowingly.

At trial, the primary issue was Sandstrom's mental state at the time of the homicide. He presented psychiatric testimony from which his counsel argued he had not acted with the requisite mens rea. Pursuant to the state's request, the trial court charged the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The defendant's timely objection was overruled; his conviction was affirmed on appeal to the Montana Supreme Court, but was reversed by the United States Supreme Court.

The Court noted that the charge at issue in *Sandstrom* is ambiguous; it is unclear whether it is a conclusive (i. e., if you find Sandstrom caused the death of the victim you must find he did so intentionally) or nonconclusive (i. e., if you find Sandstrom caused the death of the victim and if he presents no evidence to the contrary, you must find he did so intentionally) presumption. Accordingly, the Court considered the due process ramifications of both types of presumptions.

■ Presumptions which act to preclude consideration of an element of the crime conflict with the presumption of innocence and invade the factfinding function of the jury. *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Morisette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The effect of such conclusive presumptions is to relieve the State of its burden of proving beyond a reasonable doubt every element of the crime charged, an unconstitutional result under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

■ Nonconclusive presumptions, which shift only the burden of persuasion to the defendant, are also unconstitutional. Such a presumption was at issue in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 568 (1975), where the jury had been charged that malice aforethought is an essential and indispensable element of murder, but that if the State proved the homicide was both intentional and unlawful, malice aforethought was to be implied un-

less the defendant proved by a preponderance of the evidence that he acted in the heat of passion. 421 U.S. at 686, 95 S.Ct. at 1883. The Court in *Sandstrom* reiterated its *Mullaney* holding that such nonconclusive, burden-shifting charges are unconstitutional. 442 U.S. at 524, 99 S.Ct. at 2459. *See also Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

■ At Tyler's trial, as is relevant here,[2] the primary issue was whether Tyler possessed a specific intent to kill or do great bodily harm to more than one person.[3] Inasmuch as the facts revealed that Tyler fired a fully loaded pistol only once, the State relied heavily on the statutory presumption that a defendant intends the natural and probable consequences of his acts. La.Rev.Stat. 15:432. The prosecutor stressed this presumption in both opening and closing arguments. The judge then charged the jury:

2. At trial whether Tyler actually fired the pistol was at issue. He does not, however, contend in this court that there was insufficient evidence to support the conclusion that he fired the shot. Accordingly, we are treating the case as though Tyler did fire the shot.

3. At the time of Tyler's trial, La.Rev.Stat.Ann. § 14:30(4) was the only definition of first degree murder applicable to the facts of the case. It read, in relevant part:
    First degree murder is the killing of a human being
    * * * * * *
    (4) when the offender has a *specific intent* to kill or to inflict great bodily harm upon more than one person . . . (Emphasis added)
    Apparently, Tyler was charged with first degree murder, a capital crime, so that the court of general jurisdiction rather than the juvenile court would have jurisdiction over the case. In Louisiana at this time, the juvenile court had jurisdiction over all noncapital cases. La.Rev. Stat. 13:1570. Had the case been adjudicated in juvenile court, the most severe punishment which could have been imposed was juvenile supervision until the age of twenty-one at a juvenile detention facility. Furthermore, had the jury convicted Tyler of a lesser-included offense of first degree murder, the case would have had to be remanded to the juvenile court.

4. We recognize that doubts have been expressed as to whether *Sandstrom* is retroactive. *See United States v. Spiegel*, 604 F.2d 961 (5th

Presumptions are deductions or conclusions which the law *requires* the jury to make under certain circumstances in the absence of evidence in the case which leads the jury to a different or contrary conclusion. A presumption continues to exist only so long as it is not overcome or outweighed by evidence in the case to the contrary. *But unless and until the presumption is so outweighed, the jury is bound to find in accordance with the presumption.*

I charge you with State Special Charge # 1 requested under Presumptions that the defendant intended the natural and probable consequences of his act. (T. 59F) (Emphasis added).

This charge is so similar to the charge in *Sandstrom* that we can come to no conclusion but that it had the same effect as that ruled unconstitutional by the *Sandstrom* Court. Accordingly, we hold that Tyler was convicted on the basis of an unconstitutional charge.[4]

Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). Even if *Sandstrom* is not retroactive, however, this charge was unconstitutional under *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 508 (1975), which had been decided prior to the trial in this case.

The Maine homicide statute at issue in *Mullaney* established two types of homicide: murder and manslaughter. Both types of homicide required proof that the killing was unlawful (i. e., neither justified nor excused) and intentional. In addition to proof of an unlawful and intentional killing, the prosecution had to establish the killing was with malice aforethought in order to prove murder. The jury charge, however, required the jury to infer malice aforethought from proof of an intentional and unlawful killing unless the defendant proved that he acted in the heat of passion on sudden provocation.

The Supreme Court held such a charge to be unconstitutional because it permits the jury to convict a defendant of murder even though it is *as likely as not* that he was guilty only of manslaughter. 421 U.S. at 703, 95 S.Ct. at 1892 (emphasis in original).

In the case at bar, the State was obligated to prove Tyler acted with a specific intent to kill or to inflict great bodily harm on more than one person. If the prosecution proved only specific intent to kill one person, then a first degree murder conviction would not lie. The jury charge, however, required the jury to conclude

### Must the Unconstitutionality of the Charge Go Unredressed?

It is undisputed that for a trial error to be reviewable in Louisiana, an objection must be made at the time of its occurrence. La.Code Crim.P. art. 841.[5] It is also undisputed that Tyler's counsel made no objection to the erroneous charge. Accordingly, in a simplistic and conclusory argument the State asserts that under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), any error must go unredressed. We disagree.

■ Initially, we note that the State ignored the threshold question of whether the correctness of a jury charge is reviewable at all, and if so under what standard, by a federal habeas court. An erroneous instruction will support a collateral attack on the constitutional validity of a state court's judgment only if the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), *quoting from Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). *Compare Blenski v. LaFollette*, 581 F.2d 126 (7th Cir. 1978) (charge not so uninformative and confusing as to constitute a denial of due process) *with Berrier v. Egeler*, 583 F.2d 515, 521–22 (6th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978) (a muddled charge on who had the burden of proof on self-defense so infected the fairness of the trial as to warrant habeas relief). *See also Cronnon v. Alabama*, 587 F.2d 246 (5th Cir.), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979); *Bradley v. Wainwright*, 561 F.2d 1200 (5th Cir. 1977); *Higgins v. Wainwright*, 424 F.2d 177 (5th Cir. 1970); *Bonner v. Henderson*, 517 F.2d 135 (5th Cir. 1975); *Pleas v. Wainwright*, 441 F.2d 56 (5th Cir. 1970). Thus,

the threshold issue for this court is whether the charge given here so infected the trial as to render it fundamentally unfair. We conclude that it did.

The effect of the charge in this case was affirmatively to shift to the defendant the burden of proof on a critical fact which was in dispute—namely, whether Tyler had a specific intent to harm more than one person. Inasmuch as there is very little evidence to support that proposition other than the presumption at issue here, it is folly to argue that the erroneous charge did not affect the central determination of guilt or innocence.

Concluding that the charge affected the fundamental fairness of the trial does not end our inquiry, however. Because Tyler's trial counsel failed to object to the erroneous instruction, we must determine whether the district court was correct in concluding that the procedural default under Louisiana's contemporaneous objection rule bars habeas relief by this court.

*Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), admonishes us that absent cause for the procedural default and actual prejudice from the error, principles of comity and federalism prevent federal courts from granting habeas relief to state prisoners whose claim is non-reviewable in state court because of the default. This rule was designed to avoid the perceived effect of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), of encouraging "sandbagging" by defense lawyers in the state trial. 433 U.S. at 89, 97 S.Ct. at 2507.

Considering first the "prejudice" prong, we find Tyler was prejudiced by the improper jury charge. As discussed above, the error was sufficiently egregious to convince us that Tyler was denied a fundamentally fair trial. *See Harris v. Spears*, 606

---

that Tyler possessed such intent from proof of such an effect, unless the defendant proved to the contrary. Thus, Tyler could have been convicted of first degree murder even though it is *as likely as not* that he did not intend to kill or do great bodily harm to more than one person. This is an unacceptable possibility under the ruling of *Mullaney v. Wilbur*.

5. For a discussion of the Louisiana contemporaneous objection rule by then Justice Tate, see *State v. Wrestle, Inc.*, 360 So.2d 831 (La.1978), *modified on other grounds sub nom. Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979).

F.2d 639 (5th Cir. 1979); *Freeman v. Georgia,* 599 F.2d 65 (5th Cir.), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980); *Berrier v. Egeler,* 583 F.2d 515 (6th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978); *Collins v. Auger,* 577 F.2d 1107 (8th Cir. 1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979); *Sincox v. United States,* 571 F.2d 876 (5th Cir. 1978); *Bromwell v. Williams,* 445 F.Supp. 106 (D.Md.1977). *But see Blenski v. LaFollette,* 581 F.2d 126 (7th Cir. 1978).

Though "cause" was undefined in the *Sykes* opinion, subsequent decisions have given meaning to the term. Several courts have indicated that ineffective counsel, short of that necessary to make out a Sixth Amendment claim, will satisfy the "cause" prong.[6] *See Collins v. Auger,* 577 F.2d 1107, 1110 n.2 (8th Cir. 1978) (dictum), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979); *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); *Jiminez v. Estelle,* 557 F.2d 506, 511 (5th Cir. 1977) (dictum). We agree with the sentiment expressed in *Collins v. Auger,* 577 F.2d 1107, 1110 n.2 (8th Cir. 1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979), that a lack of knowledge by trial counsel that the actions of the trial judge constituted a due process violation is sufficient cause for failure to object.[7]

We find this definition of the "cause" element of *Sykes* to be completely consistent with the policies stated by the *Sykes* Court. By not binding a defendant to obvious mistakes by his trial counsel we are not permitting counsel to sandbag, but only giving relief to defendants when the erroneous, nontactical decisions by counsel result in prejudice.

As in *Jiminez v. Estelle,* 557 F.2d 506 (5th Cir. 1977), this could be a case where rigid application of the *Sykes* rule will run afoul of the Supreme Court's admonition that *Sykes* is not to be applied in such a way as to result in a miscarriage of justice. 433 U.S. at 91, 97 S.Ct. at 2508. Because the district court applied the improper legal standard in determining "cause,"[8] it is unknown whether a rigid

---

6. While Tyler made a Sixth Amendment effectiveness of counsel claim at the district court level, he has not pursued that claim here.

7. In *United States v. Brown,* (D.C.Cir.1980) (48 U.S.L.W. 2698), in the context of discussing the "cause" prong of Rule 12, Fed.R. Crim.P., the court stated:

   Even when counsel's performance is generally competent, however, he may, through oversight or ignorance, fail to present a substantial constitutional claim. Binding a defendant to the materially deficient judgment of his attorney would be a senseless penalty in most cases because most defendants lack the legal sophistication to monitor their attorney's performance.

8. In his order denying the writ of habeas corpus the district judge stated:

   Tyler argues that the "cause" of his trial counsel's failure to object to the jury charge was that his counsel was ineffective. Lack of effective counsel is also raised as a separate grounds for habeas relief. However, the only asserted basis for the claim of ineffective counsel is the failure to object to the jury charge. Considering the entire record, the court is not convinced that this decision by Tyler's trial attorney demonstrates his ineffectiveness. His performance falls clearly within the applicable standards of competence. *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir. 1960); *Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974), *rehearing denied,* 493 F.2d 664.

   Petitioner's trial counsel *may* have made a deliberate decision not to object to the "presumptions" charge because, as a matter of trial tactics or strategy, he *may* have been satisfied with the charge as a whole and did not want to raise specific objections to isolated portions of the charge. Furthermore, one of the main justifications for contemporaneous objection rules is, of course, the prevent attorneys from deliberately ignoring trial errors in order to have "built-in" grounds for appeal. A trial judge is entitled to have objections raised at a time when potential error can be prevented.

   (Emphasis added.)

   It seems clear that the district court was applying a rule which would require a showing of Sixth Amendment ineffectiveness to satisfy the "cause" element of *Sykes.* The district court erred in so doing. An attorney need not be so incompetent as to give rise to a separate ground of relief to be incompetent enough to satisfy the "cause" element of *Sykes.* Moreover, the district court seemed to foreclose habeas relief based on his speculation that there

application of *Sykes* will result in a miscarriage of justice. Accordingly, we will remand the case for a reconsideration of the "cause" element of the *Sykes* rule. It may well be that although Tyler's trial counsel was sufficiently competent overall to have provided effective assistance of counsel for purposes of the Sixth Amendment, his decision not to object to the charge was not a competent decision.[9] If so, then the "cause" prong of *Sykes* will be satisfied and the writ of habeas corpus must be granted. If not, then the district court is directed to determine whether a miscarriage of justice will result from application of the rule.

### Application of Jackson v. Virginia

Tyler next contends that there is insufficient evidence to sustain his conviction for first degree murder under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Assuming for purposes of argument that *Jackson v. Virginia* is to be applied retroactively, we find that Tyler is not entitled to habeas relief on that basis.

■ *Jackson* held that the "no evidence" rule of *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), is inadequate to protect a defendant from misapplications of the reasonable doubt standard constitutionally necessary for a criminal conviction, 443 U.S. at 320, 99 S.Ct. at 2790. In order to adequately protect a defendant from such a misapplication, a federal habeas court which is presented with a sufficien-cy of the evidence claim, must, assuming procedural prerequisites have been satisfied, grant the relief sought if on the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. 443 U.S. at 324, 99 S.Ct. at 2792.

■ Applying this test to the facts of this case, we cannot say Tyler is entitled to relief. Gary Tyler fired a .45 caliber pistol into a crowd of people. A rational fact finder could conclude that firing a pistol into a crowd of people evidences an intent to kill or do great bodily harm to more than one of those assembled. Because Tyler's *Jackson* claim goes only to the question of his intent and since a rational trier of fact could conclude he possessed that intent, Tyler cannot succeed on his *Jackson* claim.[10]

The judgment is REVERSED and the case REMANDED for further proceedings not inconsistent with this opinion.

*may* have been a deliberate decision not to object. It is inconsistent with *Sykes* to do so. If, in fact, there was a deliberate bypass, then the claim is foreclosed, but mere speculation by the district court is not a sufficient ground on which to foreclose relief.

9. The starting point for district courts in this inquiry should be a determination of the actual reason for the procedural default. If the default occurred so the defendant would have a built-in constitutional claim to raise in a federal habeas court, 433 U.S. at 89, 97 S.Ct. at 2507, or because counsel decided the error would actually be to the defendant's tactical advantage, then the "cause" prong of *Sykes* has not been satisfied. In fact, to give relief in such situations would run counter to the policies expressed by the *Sykes* Court. If, however, the default occurred because of ignorance or mis-understanding of the applicable rule of law, then the "cause" prong has been satisfied. The purpose of *Sykes* is not to punish the defendant because his attorney was unaware of the applicable law.

10. We note that the Louisiana Supreme Court used the presumption that a defendant intends the natural and probable consequences of his acts to buttress its decision that there was sufficient evidence to sustain the conviction, *State v. Tyler*, 342 So.2d 574, 582 (La.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). Because that presumption is unconstitutional for jury consideration under *Mullaney*, it follows that it cannot be used by an appellate court in reviewing the sufficiency of evidence either.