**Billy HONEYCUTT, Appellant,**

v.

**Mr. William B. MAHONEY, Superintendent; Attorney General of the State of North Carolina, Appellees.**

No. 82–6427.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1982.

Decided Jan. 10, 1983.

---

8. 18 U.S.C. § 4203(b)(3).

9. 18 U.S.C. § 4206(a).

10. 18 U.S.C. § 4203(a)(1).

11. 18 U.S.C. § 4218(d).

Ronald L. Gibson, Charlotte, N.C. (James E. Ferguson, II, Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Charlotte, N.C., on brief), for appellant.

Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of N.C., Raleigh, N.C., on brief), for appellees.

Before WIDENER, HALL and MURNAGHAN, Circuit Judges.

K.K. HALL, Circuit Judge:

North Carolina prisoner, Billy Honeycutt, appeals from an order of the district court dismissing his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Finding this appeal to be without merit, we affirm.

## I.

Billy Honeycutt was charged with the first degree murder of his wife, Brenda Honeycutt, on June 6, 1973. He pleaded not guilty and was tried in the Superior Court for Duplin County, North Carolina, in October of that year. According to the narrative summary of the trial proceedings, the state presented evidence that Honeycutt and his wife were having marital problems and that, prior to the date of the killing, Honeycutt made statements to at least three individuals indicating that he was going to kill his wife. Thomas Rouse, a friend of the defendant, testified that Honeycutt made one of these threatening statements on the night of June 5, 1973, as Rouse was driving Honeycutt to his wife's residence. They arrived there around 12:00 midnight at which time Rouse told Mrs. Honeycutt that he brought her husband there to discuss a reconciliation.

Billy Jean Honeycutt, the defendant's daughter who was living with her mother

at that time, testified that she heard her parents arguing and specifically heard the defendant say to her mother, "If I can't have you, no other man can." At that point, she heard Honeycutt open a kitchen drawer and saw him approach her mother. She then observed him pull a butcher knife out of his pants and stab her mother in the back.

The state also offered the testimony of deputy sheriff E.E. Proctor who stated that, when he told Honeycutt that his wife was dead, the defendant responded, "Ha, I'm damn glad of it." Finally, the state presented Frank Avery, the pathologist who performed the autopsy on the victim. He testified that he found multiple stab wounds in the trunk of the victim, three in the front and two in the back. According to Avery, one of the wounds in the back was three to six inches deep, but the lethal wound was through the chest and right lung, to the spine, approximately six to twelve inches deep.

Honeycutt, testifying on his own behalf, explained that he and his wife had been separated for about three weeks prior to her death and that on the night in question he had gone to her residence to attempt to reconcile their differences. He testified that his wife came at him with a kitchen knife and he struggled with her in an attempt to take it away. However, he did not remember anything from the time he took the knife away from her until the time he saw her lying on the floor in a pool of blood.

At the close of the evidence, the court instructed the jury on the law of first degree murder, second degree murder, and voluntary manslaughter. In so charging the trial judge stated:

> Now, if the State proves beyond a reasonable doubt that the defendant intentionally killed Brenda Honeycutt with a deadly weapon, or intentionally inflicted

a wound upon Brenda Honeycutt with a deadly weapon that proximately caused her death, the law raises two presumptions.

> First, that the killing was unlawful. And second, that it was done with malice.

> \* \* \* \* \* \*

> In order to reduce the crime to manslaughter the defendant must prove, not beyond a reasonable doubt, but simply to your satisfaction that there was no malice on his part.

The court gave no instruction regarding self-defense. Honeycutt's attorney made no objection to the instruction regarding the presumptions of unlawfulness and malice nor to the court's failure to instruct on the law of self-defense. The jury found Honeycutt guilty of first degree murder. On appeal, Honeycutt failed to raise any issue regarding the trial court's jury charge and his conviction was upheld. He now seeks habeas relief by attacking various aspects of the jury instructions.

## II.

In *Cole v. Stevenson,* 620 F.2d 1055 (4th Cir.) (en banc), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), a case procedurally similar to the one at bar, this Court, interpreting *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), held that one who fails to comply with North Carolina's procedural requirements for preserving challenges to jury instructions for direct review[1] is barred from seeking federal habeas corpus relief unless he can show cause for, and prejudice from, his failure to follow the state procedural rules. The issue we are

---

1. Although North Carolina now has a contemporaneous objection rule governing challenges to jury instructions, it did not have such a rule at the time of Honeycutt's trial. As we pointed out in *Cole,* 620 F.2d at 1057, however, North Carolina Rule of Appellate Procedure 10 did require exceptions to be made after trial in order to preserve the issues for appellate review. Here, Honeycutt neither objected at trial, excepted to the alleged errors after trial, nor otherwise raised the issues on appeal.

confronted with in this case is whether the failure of Honeycutt's attorney to except to the judge's jury instructions or to raise the issues on appeal constitutes "cause" under *Cole*, so as to permit Honeycutt to raise these issues in the instant petition for federal habeas corpus. Petitioner would have us answer this question affirmatively on the ground that ineffective assistance of counsel should excuse him for failing to preserve his constitutional claims in accordance with North Carolina law.

Honeycutt seeks federal habeas relief arguing that he was denied a constitutionally fair trial because of the trial court's failure to instruct on self-defense and because of the court's instruction regarding the presumptions of malice and unlawfulness.[2] While he concedes that he failed to comply with North Carolina law to preserve these issues, Honeycutt contends that his trial attorney provided ineffective assistance in his failure to properly object. We cannot agree.

■ First, petitioner argues that, in light of his own testimony, he was entitled to an instruction on self-defense and that his attorney erred in not excepting to the trial court's failure to so instruct. Under North Carolina law, "[t]o be entitled to an instruction on self-defense, . . . [a] defendant ha[s] to present evidence tending to show (1) he was free from fault in the matter, and (2) *it was necessary, or reasonably appeared to be necessary, to kill in order to protect himself from death or great bodily harm.*" *State v. Spaulding,* 298 N.C. 149, 257 S.E.2d 391, 394–95 (1979) (emphasis supplied); *see also State v. Davis,* 289 N.C. 500, 223 S.E.2d 296, 302, *death penalty vacated,* 429 U.S. 809, 97 S.Ct. 47, 50 L.Ed.2d 69 (1976), and *State v. Anderson,*

230 N.C. 54, 51 S.E.2d 895, 896 (1949). In the instant case, even when the evidence is viewed in a light most favorable to Honeycutt, *State v. Watkins,* 283 N.C. 504, 196 S.E.2d 750, 754 (1973), it does not warrant an instruction on self-defense.

Petitioner testified that his wife came after him with a knife, they struggled, and he did not remember anything clearly from the minute he took the knife away until the time he saw her lying on the floor in a pool of blood. Thus, the last thing Honeycutt recalls concerning the struggle was that he had the knife. At that point, however, the victim was unarmed and there was no evidence from which the jury could have inferred that it was necessary, or reasonably appeared necessary, to kill in order for Honeycutt to protect himself from death or great bodily harm. Consequently, even when we consider only the defendant's testimony, there simply was no basis for a self-defense instruction and, therefore, Honeycutt's counsel cannot be deemed to have rendered ineffective assistance for failing to take issue with the absence of such an instruction.

■ The second point raised on this appeal is that petitioner's trial attorney erred in failing to object to the instruction regarding the presumptions of malice and unlawfulness. These presumptions, to the extent that they shifted the burden of proof to a defendant, were held to violate Fourteenth Amendment Due Process in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *State v. Hankerson,* 288 N.C. 632, 220 S.E.2d 575 (1975),[3] both of which were decided well over a year after Honeycutt's trial and initial appeal in this case.[4] Petitioner contends, however,

---

**2.** Honeycutt also claims that his attorney erred in failing to challenge the court's characterization of his testimony. Specifically, petitioner contends that he was denied a fair trial by the judge's statement that the defendant testified that he "grabbed the knife" from his wife. Suffice to say that we see no error in the court's recounting of Honeycutt's testimony.

**3.** On certiorari, the Supreme Court reversed *Hankerson* to the extent that the state court

refused to give *Mullaney* retroactive effect. *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

**4.** Petitioner's trial was held in October, 1973, and his initial appeal heard during the Spring Term, 1974. *Mullaney* and *Hankerson* were not decided until June, 1975, and December, 1975, respectively.

that the decisions in *Mullaney* and *Hankerson* were foreshadowed by the Supreme Court's decision in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and by the First Circuit's decision in *Wilbur v. Mullaney*, 473 F.2d 943 (1st Cir.1973), *vacated*, 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96 (1974), *order reinstated on remand*, 496 F.2d 1303 (1st Cir.1974). Accordingly, he maintains that his trial attorney rendered ineffective assistance by not anticipating *Mullaney* and *Hankerson* and excepting to the instruction regarding malice and unlawfulness. Again, we cannot agree.

In *Winship*, the Supreme Court held that the Due Process Clause requires the state, in order to convict, to prove every element of the crime charged beyond a reasonable doubt. *Winship*, 397 U.S. at 364, 90 S.Ct. at 1072. An instruction to that effect, however, was clearly given by the trial judge in Honeycutt's case. Moreover, while *Winship* indeed provided the touchstone for the eventual decisions in *Mullaney* and *Hankerson*, and while *Winship* alone would have supported a challenge to the presumptions of malice and unlawfulness, an attorney such as the one which represented Honeycutt can hardly be labeled ineffective for his failure to perceive such an argument. As the Supreme Court recently stated, in holding that a change in the law alone does not constitute cause for a procedural default:

We do not suggest that every astute counsel would have relied on *Winship* to assert the unconstitutionality of a rule saddling criminal defendants with the burden of proving an affirmative defense. Every trial presents a myriad of possible claims. Counsel might have overlooked or chosen to omit respondents' due process arguments while pursuing other avenues of defense. We have long recognized, however, that the Constitu-

tion guarantees criminal defendants only a fair trial and a competent attorney. It does not ensure that defense counsel will recognize and raise every conceivable constitutional claim.

*Engle v. Isaac*, 456 U.S. 107, 133, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783 (1982); *see also Henderson v. Jago*, 681 F.2d 471, 474 (6th Cir.1982). Therefore, we cannot accept petitioner's contention that his attorney erred in failing to object on the basis of *Winship*.

■ Likewise, we do not hold Honeycutt's counsel responsible for not objecting in light of the First Circuit's decision in *Mullaney*, 473 F.2d 943. There the First Circuit upheld the ruling of the lower court[5] that a presumption of malice which acts to shift the burden of proof onto the defendant violates due process. Despite this decision, the instruction given at Honeycutt's trial regarding malice and unlawfulness was clearly in accordance with the well established rule in North Carolina. *See Hankerson*, 220 S.E.2d at 584, and *State v. Freeman*, 275 N.C. 662, 170 S.E.2d 461, 464 (1969). Moreover, neither this Court nor the Supreme Court had yet considered the issue raised in *Mullaney*. While some may contend that counsel, nevertheless, should have been aware of and raised the recent law of a lone federal circuit court, we simply do not agree that failure to do so is indicative of incompetence. Certainly a criminal defense lawyer in state court is well advised to keep abreast of current trends in the law which may be favorable to his clients. However, we do not believe that failure to raise every issue which might have support from other jurisdictions constitutes ineffective assistance of counsel.[6]

### III.

Consequently, for the reasons expressed above, we find that Honeycutt has failed to

---

**5.** *Wilbur v. Robbins*, 349 F.Supp. 149 (S.D.Me. 1972).

**6.** Petitioner's reliance on *Tyler v. Phelps*, 622 F.2d 172 (1980), *vacated*, 643 F.2d 1095 (5th Cir.1981), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982), which held that "a lack of knowledge by trial counsel that the

actions of the trial judge constituted a due process violation is sufficient cause for failure to object," is misplaced. Although there, as here, the instruction at issue was found to be unconstitutional under *Mullaney*, the trial in that case was held after the Supreme Court had decided *Mullaney*. *Id.* at 175 n. 4.

establish that he suffered from ineffective assistance of counsel at trial and, therefore, hold that he has not met the "cause" requirement of *Cole* which would entitle him to federal habeas review. Accordingly, the district court's order dismissing Honeycutt's petition for federal habeas corpus, is hereby, affirmed.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

"What a difference a day makes." What an even greater difference more than a year may make. Here we have someone convicted, in a trial which took place in October 1973, for an offense which occurred on June 6, 1973. The case of *Cole v. Stevenson,* 620 F.2d 1055 (4th Cir.1980) (*en banc*), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), described as "a case procedurally similar to the one at bar," slip op. at 215, is different in a very crucial temporal respect.

*Cole* had already been tried, and the appeal decided by the end of January 1972. Not surprisingly, the counsel in *Cole* did not object to jury instructions only later determined to be violative of a criminal defendant's rights. The decision at the district court level in *Mullaney v. Wilbur,* which first announced the rule that the burden of proving malice and illegality remained on the prosecution throughout, was not handed down until September 29, 1972, some eight months later. *Wilbur v. Robbins,* 349 F.Supp. 149 (S.D.Me.1972). The court of appeals affirmance took place only on February 14, 1973,[1] over a year *after* the appeal had been decided in *Cole,* but eight months *before* Honeycutt's trial took place.

In the case *sub judice,* the charge to the jury, given *after* the district court and First Circuit decisions in *Mullaney v. Wilbur,* contained two related provisions formerly customary in first degree murder trials in North Carolina, but recognized in *Mullaney v. Wilbur* to be violative of a defendant's constitutional rights. The jury was charged that the intentional killing or wounding of the victim in itself creates a presumption of illegality and a presumption of malice, imposing on the defendant a burden to prove to the jury's satisfaction that there was no malice on his part.[2]

There was a time not too long ago when the presumption instructions given here had uniformly been regarded as proper. Reasons to doubt their correctness began to accumulate with the decision in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the principal fundament of decision at all three court levels in *Mullaney v. Wilbur.*[3]

Given the drag effect which tends to delay modification, development or outright change in the law, we may assume, for present purposes at least, that no lawyer would have been thought to have been providing ineffective assistance by failing to raise an objection to the instructions creating presumptions burdensome to the defendant of unlawfulness and of malice merely on the collateral support supplied by

---

1. *Wilbur v. Mullaney,* 473 F.2d 943 (1st Cir. 1973). The ultimate disposition in the Supreme Court occurred on June 9, 1975, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

2. While I am not so sanguine as the majority about the refusal under the circumstances to provide an instruction on the law of self-defense, it is not necessary to enter that brambly thicket. For the purposes of my dissent, it suffices that the instructions creating presumptions of unlawfulness and of malice now are clearly recognized to be improper.

3. *Winship* was directly concerned only with the question of whether the burden on the prosecution might constitutionally be relaxed to impose only a necessity to prove the case by a preponderance of the evidence or whether the case had to be proven beyond a reasonable doubt. However, the Supreme Court's opinion presaged a much larger rule as to *where* the burden would lie, and not simply the quantum of proof when the burden is on the prosecution:

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. 397 U.S. at 364, 90 S.Ct. at 1072.

*Winship.* Defense counsel, after all, beyond preserving arguable points of law, has a responsibility not to annoy or antagonize judge or jury by objections perceived by the judge to be meritless. Impatience or undisguised incredulity on the part of the judge all too easily may be translated in the minds of the jury into a suggestion of insubstantiality of defense and of grasping at straws.[4]

For that reason, presumably, the decision in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), particularly note 8 at page 244, 97 S.Ct. note 8 at page 2345, proceeded on the basis that a mere failure to raise the point in the absence of persuasive, cogent authority would not of itself necessarily constitute cause or prejudice. The Fourth Circuit so held in *Cole v. Stevenson.*

There is, however, a great, and to my mind controlling, temporal distinction between *Cole* and the present case. The trial in *Cole* preceded any determination at the district court, circuit court or Supreme Court level in *Mullaney v. Wilbur.*[5] *See Wilbur v. Robbins,* 349 F.Supp. 149 (S.D.Me. 1972); *Wilbur v. Mullaney,* 473 F.2d 943 (1st Cir.1973), *vacated for further consideration in light of a recent decision of the State court,* 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96 (1974), *order reinstated on remand,* 496 F.2d 1303 (1st Cir.1974), *affirmed, Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

Honeycutt to the contrary was not tried until October 1973. At that time both a distinguished district judge, Judge Edward Thaxter Gignoux, and the First Circuit Court of Appeals (Bailey Aldrich, Frank M. Coffin, and Edward M. McEntee, JJ.) had recognized the compelling force of *Winship* and had extended its holding to the very situation here presented.

From all that I draw the following rather inescapable conclusions:

1. *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) held that, if defense counsel had been sufficiently prescient (or desperate) to raise at trial (or in North Carolina as part of a direct appeal) the unconstitutionality of an instruction placing the burden of proof as to an essential element of the crime on the accused, the decision in *Mullaney v. Wilbur* would apply retroactively to the case. In other words, regardless of whether practice at an acceptable level of competence would or would not have required counsel to foresee development and change in the law, if counsel did in fact raise (and hence act to preserve) the point, his client would be entitled to the benefit. At the same time, *Hankerson,* in footnote 8,[6] suggested that the states could avoid a wholesale liberation of individuals convicted in the past of serious crimes by the requirement, for example, of a contemporaneous objection preserving the point at trial.

2. *Hankerson* concerned, as does the present case, a set of facts in the intermediate position, the trial having taken place on November 21, 1974,[7] *i.e.,* after the district court and First Circuit decisions in *Mullaney v. Wilbur,* but before the Supreme Court affirmance. Counsel in *Hankerson* was diligent enough to have preserved the point by timely objection. Since counsel in *Hankerson* had done so, the suggestion appearing by way of dictum in footnote 8 simply had no pertinence to the *Hankerson* case. Understandably, therefore, it did not address possible distinctions, depending on whether the trial took place (a) before Judge Gignoux's decision on September 29, 1972, (b) after the Supreme Court's opinion

---

4. *See* dissenting opinion in *Cole v. Stevenson,* 620 F.2d at 1071 n. 25.

5. *Cf. Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), where a failure to comply with a contemporaneous objection requirement was held a proper bar to *habeas corpus* relief where the trial preceded an Ohio decision changing State law in a fashion entitling defendants to an instruction not regarded as available prior to that court decision.

6. 432 U.S. at 244, 97 S.Ct. at 2345.

7. *See State v. Hankerson,* 288 N.C. 632, 633, 220 S.E.2d 575, 578 (1975); *Hankerson v. North Carolina,* 432 U.S. at 239, n. 5, 97 S.Ct. at 2343 n. 5.

on June 9, 1975, or (c) at some intermediate date. Clearly, at some point in time, the new rule would have become well-established, and the failure to object to an instruction contravening it would, in the absence of a deliberate by-pass approved by the defendant, *ipso facto,* constitute ineffective assistance of counsel. As my brethren in the majority appear to appreciate, *see* slip op. at 219, n. 6, certainly that point in time is no later than June 9, 1975, the date of the decision by the Supreme Court in *Mullaney v. Wilbur.* As *Tyler v. Phelps,* 622 F.2d 172 (5th Cir.1980), *vacated following rehearing,*[8] 643 F.2d 1095 (5th Cir. 1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982) has held, in the case of a post-June 9, 1975 trial, the failure by trial counsel to raise an objection of the sort counsel in the present case failed to raise, coupled with an affirmative showing that there were no sufficiently cogent trial tactics to justify the failure to object, would constitute sufficient cause and prejudice under the teachings of *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Hence, the case before us presents an open and unresolved question as to what is the proper course to be followed where a trial took place after the First Circuit decision on February 14, 1973 in *Mullaney v. Wilbur,* but before the Supreme Court's decision on June 9, 1975. I simply cannot accept (bearing in mind particularly that we deal with a charge of first degree murder, the most serious which any individual is likely to face), that we mechanistically can say that, unless and until the Supreme Court alone has spoken, all other indications of a snowballing development may be safely ignored. Whether a lone district court decision would suffice to put reasonably competent counsel in North Carolina on notice, we need not decide. Obviously, the question would be a more difficult one. However, the First Circuit is a distinguished court. It announced a rule which, if the court was correct, would apply nationwide, in North Carolina as well as Maine. After the decision of the First Circuit, at least unless and until the Supreme Court should reverse the decision, there would no longer be any reason for counsel to fear a negative reaction if the point were raised (whether or not it would prevail) or the prejudice of a judicial attitude that the argument was frivolous or farfetched. The objection should have been made.[9] I say that realizing that, had I been trying the case or a similar one, I might, but for the grace of God, have made the same mistake myself. The error of counsel, however human and understandable, nevertheless arose in a case of life or death, and was too serious in its consequences to be excused simply on the grounds that the Supreme Court had not yet spoken to the exact point. It had foreshadowed the rule, as Judge

---

**8.** Vacation left undisturbed the determination that prejudice under the rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) had been established. The court altered the result on the grounds that trial counsel's complete inability to remember anything about his reasons for failing to object meant that the *habeas corpus* petitioner had not carried his burden of showing cause. Plainly, had counsel candidly admitted that he was, at the time, unaware of the decision by the Supreme Court in *Mullaney v. Wilbur,* or its implications, cause would have been shown. Furthermore, the petitioner in *Tyler* had abandoned a Sixth Amendment claim of denial of effective assistance of counsel, 643 F.2d at 1098, n. 2, thereby forcing the case into the mold of *Wainwright v. Sykes.*

**9.** It is not an irrelevant consideration that counsel in *Hankerson,* even before the Supreme Court's pronouncement in *Mullaney v. Wilbur,*

felt that the district court and First Circuit holdings in *Mullaney v. Wilbur* made it incumbent on him to preserve the very objection to instructions which counsel for Honeycutt failed, in identical circumstances, to make.

That conduct of Hankerson's counsel serves to lay to rest fear evidently overhanging some cases involving retroactivity that the state courts will be faced with a huge and straining burden in that they will have to retry many prisoners at the cost of disturbance of the handling of the current cases. Since one lawyer readily perceived the desirability and fulfilled the responsibility of relying on *Mullaney v. Wilbur* in the period between February 14, 1973, when the First Circuit spoke and June 9, 1975, when the Supreme Court affirmed, there is little basis for assuming that there was a welter of cases during that period where counsel neglected to do so.

Gignoux at the trial level, and Judge Aldrich speaking for the First Circuit had correctly perceived.[10]

Accordingly, I find here what was not present in *Cole v. Stevenson,* namely, constitutionally ineffective assistance of counsel. Since it is plainly present, there is no occasion simply to remand for a finding of whether cause had been demonstrated. Cause is manifest. Consequently, I favor the grant of the writ of *habeas corpus,* conditioned, of course, to allow the state to bring the petitioner again to trial.

**10.** *Engle v. Isaac* closes one door to *habeas corpus* relief by holding that the mere failure to object on the basis of a developing legal concept, even though other counsel in similar circumstances have preserved the point by timely objection, does not establish cause for purposes of the doctrine of *Wainwright v. Sykes:*

> We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.

*Id.* 456 U.S. at 134, 102 S.Ct. at 1574. *Engle v. Isaac,* however, does not address a situation like the one presented here, where the failure to object is not just "mere", but rather demonstrates a clear insufficiency of representation. Where incompetency of counsel is established, that amounts to cause. *E.g., Sincox v. United States,* 571 F.2d 876, 879–80 (5th Cir.1978); *cf. Jiminez v. Estelle,* 557 F.2d 506, 510–11 (5th Cir.1977). Like the Court in *Sincox:*

We are not, however, considering the tactical or strategic decisions routinely made by counsel during the course of a trial. Nor are we making a hindsight evaluation of a "judgment call." Counsel's failure to do anything to protect two fundamental rights of his client was an inexcusable mistake of grand proportion.[3]

---

[3] The government elicited testimony showing that counsel was a successful trial attorney of many years experience. We do not focus on his overall competence or standing within the profession and our holding should not be so construed. We are dealing with two specific mistakes that had the effect of compromising fundamental rights of one client. Counsel's candor in characterizing his own mistakes tends to enhance rather than detract from his professional standing. *See also Collins v. Auger,* 577 F.2d 1107, 1110 n. 2 (8th Cir.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979).